(No. 20657.—

JEANETTE R. FEINGOLD, Plaintiff in Error, *vs.* MAURICE R. FEINGOLD, Defendant in Error.

*Opinion filed June 18, 1931—Rehearing denied October 13, 1931.*

SAMUEL J. ANDALMAN, for plaintiff in error.

SHULMAN, SHULMAN & ABRAMS, (MEYER ABRAMS, of counsel,) for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

This was an action for separate maintenance, later amended to divorce, instituted by the appellant, Jeannette R. Feingold, (herein called the complainant,) in the cir-

cuit court of Cook county, by which she sought a decree dissolving her marriage to the appellee, Maurice R. Feingold (herein called the defendant). The case was disposed of when the circuit court sustained the plea of *res judicata* interposed by the defendant as a bar to the original action. From this decree sustaining the plea and dismissing the complainant's bill for want of equity she appealed to the Appellate Court, which affirmed the decree. Other issues were brought in by the defendant by his petition, seeking the restoration of moneys paid into court for temporary alimony, temporary solicitor's fees and trial costs. The case is here on *certiorari,* and the defendant has assigned cross-errors alleging that the Appellate Court incorrectly refused to pass upon the cross-errors assigned before it.

For matters arising on the plea in bar the record is large and the cross-errors have caused the making of two additions thereto. The complainant by her assignments of error complains that the Appellate Court in affirming the decree of the circuit court went contrary to the manifest weight of the evidence. While this court, by *certiorari,* has jurisdiction in chancery cases to review the judgment of the Appellate Court upon questions of fact, (*Welch* v. *Worsley,* 330 Ill. 172,) yet it will refuse to disturb the findings of the chancellor, who saw and heard the witnesses and whose findings were approved by the Appellate Court, unless it is apparent that palpable error has been committed. (*Keating* v. *Frint,* 291 Ill. 423; *Fish* v. *Teninga,* 330 id. 160.) The original record, with its two additions, is very large and contains much that bears no possible relation to the matters raised by the plea in bar and the petition of the defendant. However, we have gone through the record and have failed to find any error that would warrant this court in overriding the decree of the chancellor on the plea in bar and the judgment of the Appellate Court in affirmance thereof. So far as that plea is concerned, the decree of the

chancellor and the judgment of the Appellate Court are in accord with the law and the evidence.

The defendant filed his petition January 24, 1930, by which he sought a hearing at the same time the issue raised by his plea in bar was heard. This petition, among other averments, states the following: That on June 26, 1929, the complainant filed her bill for separate maintenance, saying she was the wife of the defendant; that she amended her bill on July 10, 1929, by asking for a divorce; that on July 29, 1929, the defendant filed his plea in bar, setting forth that he was not the husband of the complainant at the time she filed her bill, as he was divorced from her in Ohio on May 20, 1929, and that she knew these facts. It further alleges that when the complainant filed her original bill she also petitioned for a writ of *ne exeat,* alleging therein that the defendant was the owner of property in Ohio, and that he had threatened, in case of marital difficulties, that he would transfer or encumber his business, and that he had threatened to leave Illinois; that since December, 1928, he had secreted himself and kept himself concealed; that on the same day the complainant, without notice, also procured an order for the issuance of a writ of *ne exeat,* conditioning the defendant's release upon giving a $1000 bond; that prior to this time the defendant had been induced to come to Chicago from his home in Ohio for a conference with the complainant and her solicitor, Samuel J. Andalman, and upon his arrival he was arrested upon a writ issued out of the municipal court of Chicago at the instance of the complainant, on a charge of wife abandonment; that he furnished bail and again came to Chicago on June 5, 1929, to answer the charge, but that the complainant secured a continuance of the trial to June 27, 1929, the day following the filing of her original bill and petition. The defendant again appeared in Chicago on June 27 to contest the charge of wife abandonment and was served with summons on June 28, 1929, in the separate maintenance

action, and also taken into custody by the sheriff on the writ of *ne exeat*. On June 27 the circuit court issued an injunction without notice which enjoined the defendant from disposing of his property. On June 29 the bond of the defendant on the writ of *ne exeat* was increased by the court to $10,000 and he was placed in jail, and the court ordered him to pay the complainant $250 temporary alimony, $150 temporary solicitor's fees, and the further sum of $25 per week temporary alimony. On July 10, 1929, the defendant was released from jail on a surety company bond which his father procured by putting up property of his own to the value of $10,000 as collateral. On the same day the complainant amended her bill to pray for divorce. On October 16, 1929, the defendant, on motion of the complainant supported by the affidavit of her solicitor, was asked to pay $1500 solicitor's fees and $500 for trial costs. The affidavit of the solicitor as to his services rendered and to be rendered, in support of this motion, covered a period from November 14, 1928, up to June 26, 1929. On this showing the court allowed an additional fee of $500 to the complainant's solicitor and $250 trial costs. On December 2, 1929, the surety company surrendered the defendant to the sheriff, who placed him in jail. The complainant's solicitor then filed her supplemental bill to prevent the return of the collateral to the defendant's father, alleging that the collateral belonged to the defendant, and without notice obtained an injunction tying up the property. When the father of the defendant sought to intervene and protect his property the complainant promptly dismissed her supplemental bill, thus preventing the title of the collateral being made an issue.

The record substantiates the truth of the foregoing allegations in the defendant's petition. When the defendant sought to have his petition heard at the time his plea in bar was heard, the court adopted the theory of the complainant's solicitor that the defendant was in contempt of

court until he fully met the orders for the payment of alimony, solicitor's fees and trial costs. The court directed that the hearing of the plea in bar should be conditioned upon the defendant first purging himself of contempt by paying as the orders required. The defendant was in jail under the writ of *ne exeat* and could not then furnish a $10,000 bond to obtain his liberty. He could not have a hearing on his plea, which, if sustained, would free him until he had paid his arrearages in full. He had been in jail over a month and was anxious to get out. The money required ($1850) was finally secured and paid over. The circuit court promptly quashed the writ of *ne exeat* and the defendant was at liberty. Upon hearing, his plea in bar was then sustained and the complainant's bill dismissed.

The defendant recovered $400 paid to the clerk by him as temporary alimony pending the hearing of the plea in bar. By his petition he asked for the restoration of the other moneys to him for the reason that all of the facts surrounding the separate maintenance and divorce actions clearly evidenced a concerted scheme, deliberately planned and operated by the complainant and her solicitor, to use the machinery of ·a court of equity to wrongfully obtain money from the defendant under the guise of alimony and solicitor's fees. There is no question but that the complainant and her solicitor knew that the defendant had obtained a divorce in Ohio—the State of his residence and domicile. This is shown by the correspondence interchanged between the complainant's solicitor and the Ohio solicitor for the defendant in February, 1929. The record further discloses that the complainant and her solicitor knew that the defendant was badly involved in a business way and was practically insolvent. In spite of this knowledge the original bill of complaint was prepared and made ready to serve when the defendant appeared in Chicago to defend himself against a trumped-up charge of wife abandonment. This was a fraud upon the court, as the complainant and

her solicitor did not state in the bill of complaint that the defendant had secured a divorce from the complainant in Ohio nor did they truthfully portray the financial status of the defendant. The issuance of the writ of *ne exeat* was secured upon the same false foundations laid in the bill. The complainant signed the bond for $500 that the court required upon the issuance of the writ and her solicitor was her security thereon.

In allowing solicitor's fees the statement rendered by the complainant's solicitor included charges for services that are entirely unrelated to the action for divorce. These fees were also based upon the falsely alleged worth of the defendant. It was never intended that the allowance of solicitor's fees during the pendency of a suit for divorce should include services which were unrelated to the immediate action. The sum of $250 was secured from the defendant on the pretense that it was needed to procure evidence from the State of Ohio. The plea in bar had then been filed by the defendant, with exemplified copies of all the court proceedings in Ohio. The complainant and her solicitor well knew at the time this $250 allowance was requested that the defendant had been divorced from the complainant in Ohio and that she was no longer his wife. The opinion of the Appellate Court finding merit in the charge of the defendant that the complainant and her solicitor combined to extort money from the defendant by keeping him in jail on false representations was therefore based upon ample evidence.

In our opinion, however, the Appellate Court erred in refusing to give the defendant the relief prayed under his cross-errors. This refusal was based upon the state of the record, but it is not specified in just what particular the record prevented the giving of relief. From the action of the trial court denying his petition the defendant sought an appeal, but the court did not think its ruling one from which an appeal could be taken. The various attempts made by

the defendant to make a record are all shown by the certificate of evidence, which the trial court approved. After this had occurred the defendant paid the $1450 in order to obtain his liberty. This payment did not, as argued, constitute a waiver of the defendant's rights. The court would not liberate him or give him a hearing, even saying to his attorney, "instead of doing what I suggested to you, [to pay the amount ordered] you will spend the money that is involved here to take the case up to the upper court and in the meantime he stays in jail." The record shows that by this time the defendant had been harassed by the complainant for several months. He had then been in jail over a month, and from the comment of the trial judge it was not remarkable that he chose to pay. He had been placed in jail because of false allegations made by the complainant and her solicitor in their bill of complaint and petition for the writ of *ne exeat* and was being held under the mandate of a writ thus unlawfully obtained. Under these circumstances it would be a perversion of equity principles to say that the defendant waived his rights by securing the funds necessary to obtain his liberty.

The judgment of the Appellate Court is in all respects affirmed except as to its failure to grant relief to the defendant under his cross-errors. In that particular it is reversed and the cause is remanded to the circuit court of Cook county, with directions to enter a decree for the return by Jeannette R. Feingold of all moneys paid out by the defendant to her by way of temporary alimony, solicitor's fees, costs and suit money, with interest on such sums from date of payment at five per cent per annum.

*Reversed in part and remanded, with directions.*