Clara L. Janssen, Appellee, v. H. Fred Janssen, Appellant.

Gen. No. 8,687.

Opinion filed January 16, 1933.

W. St. John Wines, for appellant.

Cassels, Potter & Bentley, for appellee; Ralph F. Potter, Leslie H. Vogel and Robert B. Johnstone, of counsel.

Mr. Justice Shurtleff delivered the opinion of the court.

This is an appeal by H. Fred Janssen, petitioner below, from an order of the circuit court of Sangamon county refusing to modify a decree for separate maintenance in favor of the respondent, Clara L. Janssen, entered in this cause at the March term, 1925, as subsequently modified. Appellant's claim to the relief

sought is predicated solely upon a purported decree of divorce obtained by him from a Reno, Nevada, court based on substituted service upon the appellee, who at all times remained in the State of Illinois and who in no way submitted to the jurisdiction of that court.

Appellant claimed to have established a bona fide residence in the State of Nevada after the circuit court of Sangamon county, the place of his residence and of the matrimonial domicile, had twice refused him a divorce and had granted appellee the decree for separate maintenance here in question.

The material facts are as follows: The parties to this cause were married in the State of Illinois in the year 1899. In 1922 they separated and thereafter at the January term, 1924, of the circuit court of Sangamon county the appellant filed his bill for divorce from the appellee charging desertion. A trial was had upon the bill and appellee's answer which resulted in a decree in favor of appellee.

At the September term, 1924, of the circuit court of Sangamon county the appellant again filed a bill for divorce against appellee this time charging adultery. The appellee filed her answer to the bill denying the charges and also filed a cross bill for separate maintenance.

A trial was had on the original bill and answer resulting in a decree dismissing the original bill for want of equity. Thereafter a hearing was had on the cross bill and appellant's answer thereto. Following the hearing the court entered a decree finding the equities in favor of appellee and that she was living separate and apart from appellant without fault on her part. By the terms of this decree appellee was granted separate maintenance in the amount of $1,000 per year. It is this decree, as subsequently modified, that appellant is here seeking to avoid.

On June 28, 1931, appellant went to Reno, Nevada. Prior to that date he had learned that the law of

Nevada required only six weeks' residence to obtain a divorce. He consulted his attorney regarding the Nevada law and about three months before going to Reno he corresponded with an attorney there regarding the law and his contemplated divorce action. When he went to Reno it was with the specific intention of obtaining a divorce.

Appellant testified that he first made up his mind to reside in Reno "when he lost his cough," and that he "lost his cough" after he had been in Reno four or five weeks. Six weeks after he arrived in Reno appellant filed his complaint for divorce and immediately thereafter returned to Springfield, where he remained until a few days before his divorce suit was set for trial. During all the time he had been in Reno appellant continued to operate his floral and seed business at Springfield. Appellant returned to Springfield, Illinois, to look after his business at the expiration of the six weeks' residence at Reno.

Before returning to Illinois appellant filed his suit in the Nevada court, praying a divorce on two charges: that, for more than five years immediately and continuously preceding the filing of the complaint (bill for divorce), the plaintiff and defendant have lived separate and apart and have not cohabited during said time, the last time of living together and cohabitation having occurred on February 13, 1922. Second, that defendant had treated the plaintiff with extreme cruelty in the particulars alleged in the complaint and thereby rendered his life miserable, etc.

The record shows that service was secured on the defendant at her home in Evanston, Illinois, where she had resided for some years, by service of summons and copy of the complaint. She did not appear and defend in the Nevada court, either in person or by counsel. On October 20, 1931, a decree was duly entered by the district court of Washoe county, Nevada, granting

a divorce to the plaintiff on both grounds alleged in his complaint.

During his six weeks' stay in Reno, Janssen's bank account at Springfield remained unchanged and his business went on as usual. He transferred his church membership to a church in Reno and paid a poll tax in that city, but up until the time of the trial of this cause in the lower court did not avail himself of the privileges thus obtained, as practically all of his time was spent in Springfield. He opened a bank account there, which at the time of the trial showed a balance of $48.93, and purchased some lots in Reno on a time payment contract, paying $100 as the first payment, and all of the while he had extensive real estate and personal property holdings in Springfield.

Neither at the hearing or at any other time did appellant disclose to the Reno court the previous adjudications of the Illinois court denying him a divorce. The decree in this cause finding that appellee was living separate and apart from appellant without fault on her part and awarding her separate maintenance was concealed from the Reno court. In ignorance of these adjudications by the court of the marital domicile, the Reno court was induced to grant appellant the purported divorce.

On November 14, 1931, less than a month after he had obtained his Reno decree, appellant filed his petition for modification of the separate maintenance decree in this cause. Because of the Reno decree he claimed that he should no longer be required to make the payments provided for in the separate maintenance decree. Further he claimed that the Reno decree terminated all of appellee's rights in his Illinois property. To his petition for modification appellee filed her answer denying appellant's right to the relief sought and alleging that the Reno decree is void: First, because appellant never established a bona fide

residence in Nevada; second, because appellant fraudulently concealed the prior Illinois adjudications from the Nevada court; third, because the prior decrees of the circuit court of Sangamon county were *res adjudicata* on appellant's right to divorce; and fourth, because appellant obtained his Reno decree by fraudulently testifying falsely in support of his complaint for divorce in the Reno court. The cause was tried below in May, 1932, and on July 1, 1932, the court entered the order appealed from, denying appellant relief.

Appellant has brought the record, by appeal, to this court for review.

Appellant contends that his Nevada decree, obtained upon substituted service and without disclosing the prior adverse proceedings in Illinois, is entitled to full faith and credit and operates to discharge appellant from all of his marital obligations, including his obligation to pay appellee separate maintenance under the terms of the prior decree in this cause.

Appellee contends that the decree of the circuit court of Sangamon county should be affirmed for the following reasons: first, since the jurisdiction of the Reno court was based upon substituted service its decree is not entitled to full faith and credit under the Constitution of the United States; and, further, since appellant had previously been adjudged the party at fault by the courts of Illinois, the marital domicile, the Nevada court could not possibly obtain jurisdiction to render a valid decree at his suit.

Second, aside from the jurisdictional question, the Nevada decree is void since appellant's residence in Reno was only colorable and the decree was obtained by fraudulently concealing from the Nevada court the prior Illinois proceedings, in which the rights of the parties were conclusively adjudicated; and

Third, even if it be assumed that the Nevada decree could effectively destroy the marital status of the

parties it could not possibly affect the rights of appellee in appellant's Illinois property, nor could it terminate her rights under the Illinois separate maintenance decree.

It was held in *Haddock v. Haddock,* 201 U. S. 562, 50 L. Ed. 867: "The mere domicile within the State of one party to the marriage does not give the courts of that state jurisdiction to render a decree of divorce enforceable in all the other States by virtue of the full faith and credit clause of the Federal Constitution against a nonresident who did not appear and was only constructively served with notice of the pendency of the action."

This rule has been elaborated upon and affirmed in *Wynn v. Wynn,* 254 Ill. App. 254, 259, a similar case, where the court held:

"A decree of divorce entered by a court of a foreign State will be held void by a court of this State where the evidence shows that the complainant practiced a fraud upon the foreign court with respect to the time of his residence, in concealing the address of defendant, which was well known to him, thus causing that court to wrongfully assume jurisdiction. *Field v. Field, supra.* In *Dunham v. Dunham, supra,* it was held that where a wife who, upon separation from her husband, goes into another State for the purpose of obtaining a divorce and brings a suit without disclosing the fact that a suit is pending in the State of her former residence, involving the same matters alleged as a cause of divorce, and in which she has appeared, she is guilty of such fraud as to invalidate a decree of divorce obtained by her, although the pendency of the prior suit could not have been pleaded in abatement nor in bar of her divorce suit."

In *Commonwealth v. Booth,* 165 N. E. 29, 30, the Massachusetts court held:

"The courts of this commonwealth are not bound to give a divorce obtained in these circumstances full

faith and credit under the Constitution of the United States. *Haddock v. Haddock,* 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1. Principles of interstate comity do not require that recognition be given to a divorce obtained by a court without jurisdiction of the other spouse or of the matrimonial *res* and doing violence to our own prior adjudication as to the matrimonial fault of the party procuring the divorce.

"The removal of the domicile of the wife from this commonwealth for a period of ten months, followed by resumption by her of the matrimonial domicile, the filing during this period by the defendant of his libel for divorce in Indiana, and the granting of that divorce after the resumption by the wife of the matrimonial domicile, are not factors requiring the courts of this commonwealth to recognize the Indiana divorce. They do not affect the rule established by *Haddock v. Haddock,* 201 U. S. 562, 26 S. Ct. 525, 50 L. Ed. 867, 5 Ann. Cas. 1."

The same rule has also been followed in *Lednum v. Lednum,* 85 Colo. 364, 276 Pac. 674; *Bennett v. Tomlinson,* 206 Iowa 1075, 221 N. W. 837.

While the rule in *Haddock v. Haddock, supra,* is merely a construction of the due faith and credit clause of the Federal Constitution, which the courts of the States are not required to follow in a case of substituted service, the *Haddock* case having been decided by a divided court, appellant contends strenuously that the rule laid down by the majority of the court is wrong, and states that "the arguments advanced by the learned judges who filed dissenting opinions are strong and forceful and much more effective than anything that could be said by the writer of this argument in behalf of appellant. While the court will doubtless review the *Haddock* case in its entirety, it might not be out of place, merely for the convenience of the court, to quote some of the things said by the court

and referring to the pages of the opinion where such statements may be found.''

We have carefully gone over all that was said in *Haddock v. Haddock, supra,* and whether the majority rule, as above cited, is a good rule or a bad rule, the majority rule and the minority rule each hold in accordance with the provisions of the constitution that, ''If a judgment is conclusive in the State where it is rendered, it is equally conclusive everywhere in the courts of the United States.''

Under this rule, appellee's decree in the State of Illinois, granting her separate maintenance and finding that appellee was living separate and apart from appellant, without her fault, in Illinois, the place of their domicile, is equally conclusive upon the courts of Nevada as upon the courts of Illinois, and appellee cannot be compelled to defend this decree in the courts of Nevada.

The whole argument in the *Haddock* case is based upon one or the other of the contracting parties to the marriage having changed his or her domicile after the marriage. As to appellee's rights in the separate maintenance decree in Illinois, no such question is raised. The separate maintenance decree was obtained in the State of the domicile of the marriage relation, by personal service, while each party was residing in Illinois. It is a right of property in appellee, secured by liens upon property in Illinois, and clearly comes within the spirit and language of the Federal Constitution that due faith and credit shall be accorded to this decree by every State in the union. How can appellant by merely removing to a foreign State, temporarily or permanently, destroy this property right?

Indeed, it was held in the early case of *Pennoyer v. Neff,* 95 U. S. 714, 24 L. Ed. 565, that ''where a personal judgment has been rendered in the courts of a

state against a nonresident upon constructive service, and, therefore, without acquiring jurisdiction over the person of the defendant, such judgment may not be enforced in another state, in virtue of the full faith and credit clause. Indeed a personal judgment so rendered is, by virtue of the due process clause of the fourteenth amendment, void as against the nonresident even in the state where rendered; and therefore, such nonresident, in virtue of rights granted by the constitution of the United States, may successfully resist, even in the state where rendered, the enforcement of such judgment.'' All of the court who acted in the *Haddock* case would and did concur in this ruling.

But in the case of a decree upon constructive service in a foreign State, brought to a sister State, the rule in the *Haddock* case is not mandatory, and the sister State may, from comity, public policy, or other reasons, give full faith and credit to such decrees if it is so disposed. (*Dean v. Dean,* 241 N. Y. 240, 149 N. E. 844.) The court said in that case: ''The only question is whether comity or public policy, or, to put it differently, our own interpretation of the conflict of laws, should prompt us to concede a recognition that we are at liberty to refuse.''

But the State of Illinois has a public policy upon this subject matter that is pronounced and has been repeatedly declared in the adjudicated cases. It has been held that due faith and credit will be accorded in divorce cases to the decrees of sister States upon substituted service, where the complainant was a bona fide resident of the State in which the decree was granted and where there was no fraud or imposition upon the court.

In *Dunham v. Dunham,* 162 Ill. 589, the court held on page 613:

''The result would therefore appear to be, that as a matter of strict legal right, no deception being prac-

ticed upon the court and jurisdiction assumed, appellant would have had the right to proceed with her suit in South Dakota and to make her defense in this case at the same time. She did not commence the suit in Illinois, nor did she ask for an affirmative decree of divorce by way of cross-bill. She surely had the right to defend against this suit and to defend her character against the severe charges made against her. She had also the clear right to defend her property rights attacked by the bill. It was, however, the jurisdiction in which she had passed her married life with appellee, and where the alleged misconduct of appellee, set up in her answer by way of recrimination and in her complaint as grounds for divorce, took place. Still, it cannot be said that the South Dakota decree could be denied validity on this ground. At the same time and by the same legal principles appellee could not have appeared and successfully pleaded in the South Dakota court the pendency of the prior suit in this jurisdiction in bar or in abatement of her suit there, and it could not well be contended that any duty was imposed on him to enter his appearance in a foreign court to either contest the same issue which was already pending in the court of his own State, in which both parties had appeared, or to endeavor to obtain a stay of proceedings in such foreign suit until the prior suit was determined. He had not been served in South Dakota, and he was not bound to appear there at the risk of suffering a decree good not only as a dissolution of the marriage, but *in personam* also. It has, however, been held that in such a case the court in the State where the second suit is brought may, in its discretion, stay the proceedings there pending until the prior suit is determined. (1 Ency. of Pl. and Pr. 770, and cases cited in note. See, also, 23 Am. & Eng. Ency. of Law, 523.) It is also true that in actions strictly *in rem,* where one court has obtained possession of the *res* sought to be reached, the process of other courts must

pause until that possession be terminated. (*Allen v. Supervisors,* 11 Wall. 136.) While this rule is not strictly applicable to divorce cases, yet, such cases being regarded as to some extent *in rem,* an additional reason appears why, in such cases, the court in which the second suit is brought would stay the proceedings unless the rights of citizens of its own jurisdiction would be thereby prejudiced. And this would seem to be the only way to avoid a serious conflict of jurisdiction in such a case, and would evince such a spirit of forbearance and respect for the authority of the courts of a sister State whose jurisdiction had first attached, as might well be expected would be shown by the courts of the several States in the administration of justice under circumstances of so complicated a character. But the circuit court of South Dakota was not afforded any opportunity for the exercise of this discretion. By the concealment of appellant that court had no knowledge that the very questions it was called upon to try in an *ex parte* proceeding were then at issue and pending in a prior suit in the State where both parties had been domiciled and where both had appeared. More than this, it was denied the knowledge that the very facts upon which its jurisdiction depended were then at issue in such prior suit.

"While the question is one not free from difficulty, we are of the opinion that appellant failed to act in good faith to the court in which her suit was brought in South Dakota, that she was guilty of fraud upon the court and upon the public in obtaining her decree, and that it is therefore void. It would certainly be an anomaly in legal procedure if a party to a divorce suit pending here, and in view of all the facts disclosed by this record, could, in an *ex parte* proceeding commenced later in time, obtain a decree in another State and make use of it to oust the jurisdiction of the courts of this State, or, rather, to bar their further proceed-

ings in the cause. We do not say that such a result might in no case be reached, for it must be admitted that if, after such disclosure to the court of South Dakota as we hold it was the duty of appellant to have made, that court had nevertheless proceeded with the cause to final decree, as it had the power to do if she had been a bona fide resident there, it might well be that such final decree could have been pleaded as a bar to the further maintenance of this suit. But that point has not been reached in this case, and in no other of a like character to which our attention has been called. As said by Mr. Justice Dickey in *Mail v. Maxwell*, 107 Ill. 554 (at p. 561): 'The exercise of sound discretion by the respective courts in our complicated system of government, and the observance by them of a few simple and just rules, has been such that no serious difficulty has been encountered from such a cause,'—that is, from a conflict of jurisdiction.''

And in *People v. Case*, 241 Ill. 279, 285, the court held: ''This court, in *Dunham v. Dunham, supra,* held that when the wife, upon a separation from her husband, goes to another State for the purpose of obtaining a divorce, and brings a suit there for that purpose without disclosing the fact that a suit is pending in this State involving the same matters, she is guilty of such fraud and deception as to invalidate the decree of divorce obtained by her in such other State. Surely the law and decisions on these questions were well known to an attorney of more than twenty years' practice.'' This rule has been followed in *Feingold v. Feingold,* 345 Ill. 203, and *Wynn v. Wynn,* 254 Ill. App. 254, 259.

It is only when the party to a divorce in a sister State has brought his or her suit upon constructive service, and established a bona fide residence in the sister State and the suit and action is free from any fraud, that the courts of this State will give full faith

and credit to the decrees of other states; otherwise, such decrees are void.

Testing the conduct and proofs of appellant by this rule it seems to be shown by the preponderance of the evidence that appellant never went to the State of Nevada with the bona fide intention of establishing a residence in that State. He consulted lawyers about the means of obtaining a divorce in Nevada before going there. His business was in Illinois and he spent but a very few weeks in the State of his adoption, sufficient only to start his suit. After his first trip out there he returned to his business and home in Illinois, returning to Nevada to spend a day or two only at the trial of his cause. He was in Nevada only six weeks on his first trip and testifies he did not then determine to remain in Nevada until he found the climate had "cured his cough" several weeks after his arrival, which shows he did not have a bona fide intention of remaining in Nevada. By his pleadings and proofs in the Nevada court he concealed from the court all of the legal proceedings which had taken place in the courts of Illinois, and thereby deceived the court as to the status of his marriage relation with appellee and her property rights growing out of such proceedings and relations.

We are compelled by the proofs and the law as we understand it to hold that the decree of divorce granted by the Nevada court to appellant was and is void, and the decree of the circuit court of Sangamon county is therefore affirmed.

*Affirmed.*