## Cora Grein, Appellant, v. George Grein, Appellee.

### Gen. No. 9,204.

Heard in this court at the October term, 1939. Opinion filed January 15, 1940. Rehearing denied February 23, 1940.

CLARK, NOEL & DIETZ, of Urbana, for appellant.

JAMES H. PRICER, of Mansfield, for appellee.

MR. JUSTICE HAYES delivered the opinion of the court.

This is an appeal from the circuit court of Champaign county, from an order and decree dismissing the complaint of Cora Grein, appellant, hereinafter called plaintiff, against George Grein, appellee, hereinafter called defendant, for want of equity.

This complaint seeks to have declared void a decree of divorce secured by the defendant in the district court of the second district of the State of Nevada.

It appears from the record that the parties were married on the 30th day of June, A. D., 1930, and lived together until the 8th day of April, 1931. On the 10th

day of April, 1931, Mrs. Grein filed a suit for separate maintenance in the circuit court of Champaign county, and on the 15th day of October, 1931, George Grein, the defendant, filed a cross-bill for divorce, alleging desertion. On the 30th day of December, 1932, after a trial in this cause, the court dismissed both the original complaint and the cross-complaint for want of equity. On February 24, 1934, the defendant again filed a suit for divorce in the same court, alleging desertion. Cora Grein filed an answer. The matter was heard by the court on the 5th day of November, 1934, and a decree was entered finding Cora Grein not guilty of desertion. The complaint was dismissed for want of equity. George Grein appealed to this court, and on July 17, 1935, this court affirmed the decree of the circuit court in said cause. The following March, George Grein went to see a lawyer at Urbana, Illinois, to see if he could get a divorce in Illinois. At the same time he inquired about the divorce laws of the State of Nevada.

Under the statute of the State of Nevada, where husband and wife have lived apart for five consecutive years, without cohabitation, the court may at its discretion grant an absolute decree of divorce. The period of five years' separation expired April 8, 1936. The defendant testified that he arrived in Reno, on July 14, 1936. Under the laws of this same State, a complainant is required to reside in the State of Nevada for six weeks prior to filing a suit for divorce. On August 31, 1936, George Grein filed his complaint in the district court of the State of Nevada, in the county of Washoe, charging Cora Grein with extreme cruelty. He also alleged that the parties to said suit had lived separate and apart for more than five consecutive years without cohabitation, which complaint was sworn to by George Grein. Neither in his complaint, his evidence nor proceedings of the Nevada case,

did George Grein advise the Nevada court of his two prior divorce suits in Illinois in which he had been denied a divorce. Constructive service was obtained on Mrs. Grein. She did not appear or defend the Nevada case, nor did the Nevada court obtain personal jurisdiction over her.

It appears from the transcript of George Grein's testimony in the Nevada case, that all the evidence bearing on the question of extreme cruelty had occurred prior to his second divorce action in Illinois, and is as follows:

"Mrs. Grein treated me with extreme cruelty, always nagging at me and kicked me out of bed the second night I was married to her. Every time she passed me in the dining room she knocked me with her fist and she would be gone every day of the week. She would pack a big lunch and she would not come home until seven o'clock and sometimes eleven at night. She twisted my arm around a chair, and I told her that was a nice way to treat an old man. She was trying to do away with me, and I found the gas turned on three different times. She threw something in my eyes on one occasion, and I had to go to a doctor to relieve the condition of my eyes. She nagged and found fault with me shortly after the marriage and continued up to the time of the separation. She left me on April 8, 1931, and I have never since lived with her. I have been under a nervous strain since I married her. I did not give her any cause for treating me that way." It appears that all this, if true, existed at the time of Grein's last divorce in Champaign county, Illinois. Although the Illinois case was based on desertion rather than cruelty, the law is,

"Where several causes of divorce exist to the knowledge of complainant and a divorce is sought upon one ground only, a decree on the merits denying the petition is generally held a bar to a subsequent petition

based on another of such existing causes. . . . Unless a cause known is pleaded in the original action or good cause for the omission is shown, the plaintiff must be deemed to have waived any right to a divorce depending exclusively upon facts existing and known to him at the time of the first application to the court and not relied on at that time.'' 17 Am. Jur., section 177, page 240.

In the present suit, the defendant testified that he went to Reno, Nevada, for the sole purpose of his health. It appears from the record, however, that two days after the expiration of the six weeks, he filed suit for divorce. He received his divorce on the 5th day of October, 1936, and on the 7th day of October, 1936, he left Reno for Miami, Florida, where he stayed until the 19th day of February, 1937. Leaving Florida he returned to Reno, and stayed two months in a hotel, at the end of which time he went to Champaign, Illinois, and remained during the summer of 1937. This suit was filed the 23rd day of August, 1937. The evidence shows that George Grein moved into a house located at 305 East Daniel street, Champaign, Illinois, in the year of 1919, and that he still owns this property and has lived there ever since, except for the short period of time spent in Miami and Reno, at which time the house remained unoccupied until his return when he again lived in the same house.

After defendant obtained his divorce, he had every reason to anticipate the same might be contested in the courts of Illinois, so he did not come to Illinois, but went to Florida and remained several months, then went back to Reno, and stayed for two months. Shortly after his return to Illinois the following summer, this suit was filed by his wife. During the two months that he was in Reno, and subsequent to obtaining his decree of divorce, it appears that he filed an income tax return, opened a small bank account and wrote three

checks against it. He claims to have voted while in Nevada as well as registered his automobile, all of which can be reconciled for the purpose of obtaining a divorce and nullifying the effect of the adjudication in the Illinois courts, and in keeping with the creation of self-serving evidence contemplating litigation in Illinois. In this connection this court stated in the case of *Jardine v. Jardine,* 291 Ill. App. 152, citing with approval *Janssen v. Janssen,* 269 Ill. App. 233:

"The first question presented is whether the defendant when he went to Reno, Nevada, and lived there for the statutory period of six weeks, did so solely for the purpose of obtaining a divorce or whether it was his intention as an actual, bona fide resident of the State of Nevada to remain there permanently, or, at least, for an indefinite period. His intention is to be gleaned not so much from what he now states such intention to have been, but from the facts and circumstances as they occurred."

It is a well-established proposition that where one spouse goes to a State other than that of the matrimonial domicile and there obtains a divorce under a residence simulated for that purpose and not in good faith, the judgment is not binding upon courts of other States. It is within the power of the State to forbid the enforcement of such a decree. The rule is especially true where the cause of divorce is one not recognized by the laws of the State of his domicile, and the full faith and credit clause of the Federal Constitution is not violated by the refusal of a State court to give effect to a foreign decree of divorce obtained by one who had temporarily left the State for the purpose of obtaining the divorce for a cause which had occurred in the State while the parties resided there and which was not there a ground for divorce. There is no rule of law, however, which prevents one from changing his domicile in order to facilitate his obtaining a di-

vorce or to secure other advantages he may think that the laws of the new domicile may afford him; he is free to change at his pleasure, provided the change is a bona fide one, and a divorce so acquired will be recognized in the State of his former domicile. 19 Corpus Juris 370, sec. 836.

Our Supreme Court, in the case of *Dunham v. Dunham,* 162 Ill. 589, 611, said:

"The considerations which have been mentioned make it clear that it is the duty of the applicant in an *ex parte* proceeding for divorce, on pain of obtaining an invalid decree, to avoid practicing any deception on the court in any matter affecting its jurisdiction or its discretion to proceed or not to the final determination of the cause."

In the case of *Janssen v. Janssen,* 269 Ill. App. 233, the facts are practically the same as in the case at bar. In that opinion it was pointed out that neither at the hearing nor at any other time did the appellant disclose to the Reno court the previous adjudications of the Illinois court denying him a divorce, and it was in ignorance of these adjudications by the court of the marital domicile, that the Reno court was induced to grant the purported divorce. In that opinion the court said:

"It is only when the party to a divorce in a sister State has brought his or her suit upon constructive service, and established a bona fide residence in the sister State and the suit and action is free from any fraud, that the courts of this State will give full faith and credit to the decrees of other states; otherwise, such decrees are void."

This court stated in *Janssen v. Janssen, supra:*

"It was held in *Haddock v. Haddock,* 201 U. S. 562, 50 L. Ed. 867: 'The mere domicile within the State of one party to the marriage does not give the courts of that state jurisdiction to render a decree of divorce enforceable in all the other States by virtue of the full

faith and credit clause of the Federal Constitution against a nonresident who did not appear and was only constructively served with notice of the pendency of the action.' "

In the case of *Jardine v. Jardine, supra,* this court cites with approval *Frey v. Frey,* 59 F. (2d) 1046, and quotes therefrom as follows:

" 'Undoubtedly it is true that a divorce granted in any state according to its laws by a court having jurisdiction of the cause and of both the parties is valid and effectual everywhere, but a divorce obtained by a person legally domiciled in one state who leaves that state and goes into another solely for the purpose of obtaining a divorce and with no purpose of residing there permanently, is invalid and the state of bona fide residence may forbid the enforcement within its borders of a decree of divorce so procured. *Andrews v. Andrews,* 188 U. S. 14, 23 S. Ct. 237, 47 L. Ed. 366. And this is true even though the decree of divorce recites facts sufficient to give the court jurisdiction. *Sewall v. Sewall,* 122 Mass. 156, 23 Am. Rep. 299. The underlying reason for this is perhaps nowhere better expressed than by Mr. Justice Field in *Maynard v. Hill,* 125 U. S. 190, 211, 8 S. Ct. 723, 729, 31 L. Ed. 654, where he said: "Other contracts may be modified, restricted, or enlarged, or entirely released upon the consent of the parties. Not so with marriage. The relation once formed, the law steps in and holds the parties to various obligations and liabilities. It is an institution, in the maintenance of which in its purity the public is deeply interested, for it is the foundation of the family and of society, without which there would be neither civilization nor progress.' "

The chancellor, in passing on this evidence, reached the conclusion that plaintiff had not proven that defendant did not acquire a bona fide domicile in the State of Nevada, also that she failed to prove that defendant had practiced a fraud on the court in the State

of Nevada. In passing on the question of the domicile of the defendant in Nevada, he stated: "In my judgment, under this evidence, there are some suspicious circumstances." Under the record we are compelled to reach a different conclusion than that reached by the worthy chancellor, and find that defendant was not a bona fide resident of the State of Nevada, and that he was guilty of fraud and deception in the district court of the second district of the State of Nevada, in the county of Washoe, in that he failed to advise said court of the former adjudications in Champaign county, Illinois.

For the reasons herein stated, the decree of the circuit court of Champaign county is hereby reversed, and cause remanded to said court, with direction to enter a decree in favor of the complainant for the relief prayed for in her complaint in accordance with the finding of facts herein made.

*Reversed and remanded with directions.*