(No. 27461.—

ETHEL W. ATKINS, Appellee, *vs.* WALTER B. ATKINS, Appellant.

*Opinion filed March 21, 1944—Rehearing denied May 11, 1944.*

C. H. Woods, of Lincoln, for appellant.

Harold F. Trapp, of Lincoln, for appellee.

Mr. Justice Murphy delivered the opinion of the court:

The parties to this proceeding were married January 16, 1934. By this appeal the defendant husband seeks reversal of a decree entered in the wife's separate maintenance action which was entered in the circuit court of Logan county. Defendant was ordered to make monthly payments to plaintiff for her support and maintenance and to pay her solicitor's fees in the amount fixed by the decree. The decision of this case rests upon the effect to be given a decree of divorce granted defendant in the district court of Washoe county, Nevada. Defendant started the Nevada proceeding five days after plaintiff instituted her suit in Illinois. The chancellor held the Nevada decree could not

be given the effect of barring plaintiff's right to support and maintenance. This ruling is assigned as error.

The jurisdiction of this court to take the cause on direct appeal is dependent upon whether such assignment raises a constitutional question. Defendant contends that under the full-faith-and-credit clause, section 1 of article IV of the Federal constitution, the court erred in rejecting the Nevada decree.

Section 75 of the Civil Practice Act (Ill. Rev. Stat. 1943, chap. 110, par. 199,) prescribes the jurisdictional limits by which this court may take a case on direct appeal. Among other grounds, it is provided that jurisdiction shall attach on direct appeal where there is a question involving the "construction of the constitution." This phrase has been construed to include cases involving construction of the Federal constitution as well as provisions of the State constitution. *VanDyke* v. *Illinois Commercial Men's Ass'n,* 358 Ill. 458; *Central Union Telephone Co.* v. *City of Edwardsville,* 269 U. S. 190, 46 S. Ct. 90, 70 L. ed. 229.

The Supreme Court of the United States is the final arbiter as to the meaning of the full-faith-and-credit clause of the Federal constitution, (*Milwaukee County* v. *M. E. White Co.* 296 U. S. 274, 80 L. ed. 226,) but that does not prohibit this court in the first instance from disposing of a Federal constitutional question when properly presented. Prior to the decision in *Williams* v. *North Carolina,* 317 U. S. 287, 63 S. Ct. 207, 87 L. ed. 189, the bench and bar of this State had assumed that the decisions of the United States Supreme Court as announced in *Haddock* v. *Haddock,* 201 U. S. 562, 50 L. ed. 867, and other cases, and the decisions of this court in cases such as *Dunham* v. *Dunham,* 162 Ill. 589, and *Field* v. *Field,* 215 Ill. 496, contained a full exposition of the meaning of the full-faith-and-credit clause and that the State court's problems were limited to an application of the principles announced in such cases to the facts of the particular case. It was generally regarded

that such cases did not present constitutional questions sufficient to give this court jurisdiction on direct appeal. As a result many cases involving the application of the full-faith-and-credit clause were appealed direct to the Appellate Court. Some of those cases are *Grein* v. *Grein,* 303 Ill. App. 398, *Jardine* v. *Jardine,* 291 Ill. App. 152, *Janssen* v. *Janssen,* 269 Ill. App. 233, and *Wynn* v. *Wynn,* 254 Ill. App. 254.

If the facts in this case were on all fours with the facts in *Williams* v. *North Carolina,* we would conclude that the contentions made here in reference to the constitutional question are fixed and determined by that case and that this court would not assume jurisdiction on direct appeal. However, we believe there is sufficient difference between the facts of this case and the *Williams case* as to require a consideration of the full-faith-and-credit clause which was expressly excluded from the scope of the decision in the *Williams case.* If such assumption is correct, then the determination of the questions involved leads to a construction and interpretation of the full-faith-and-credit clause of the Federal constitution and this is sufficient for jurisdiction to attach on direct appeal.

Plaintiff and defendant were residents of this State prior to their marriage. Immediately after they were married they established a home in Lincoln, Illinois, where they lived as husband and wife until May 8, 1940, when defendant moved from the home.

On August 8, 1941, plaintiff filed the instant suit for separate maintenance in Logan county. It was alleged that she was a resident of Illinois and had been for more than ten years, and that defendant was a resident of Lincoln, Logan county, Illinois. It was also alleged that defendant deserted and abandoned plaintiff, without fault on her part, on May 8, 1940. A summons was issued, as requested, directed to the sheriff of Logan county for service but it was returned by said sheriff with the notation that de-

fendant could not be found in the county. Plaintiff's affidavit attached to her complaint stated that defendant had gone out of the State and that his address was Reno, Nevada. Notice was published as is required by statute of this State to obtain constructive service on defendants who are without the jurisdiction. There is nothing in the allegations of the complaint or plaintiff's affidavit which can be taken as her admission that defendant had established a domicile in the State of Nevada.

On August 13, 1941, defendant filed a suit for divorce in the district court of Washoe county, Nevada. The grounds were "extreme cruelty entirely mental in character." Such grounds are not recognized as cause for divorce in Illinois. Constructive service was had upon plaintiff by the sheriff of Logan county, Illinois, serving her in that county by delivering her a copy of the Nevada complaint. She was not personally served in Nevada and did not appear in the suit, either in person or by attorney. On December 23, 1941, in an *ex parte* hearing in the Nevada court, defendant obtained a decree of divorce from plaintiff.

The defendant registered at a hotel in Reno, Nevada, June 30, 1941, and continued his stay there until August 25, when he moved to a private home. On August 26, he left Nevada and returned to Illinois, where he remained until November 11. He then returned to Nevada and occupied the room in the private home to which he had moved on August 25.

While defendant was in Illinois, he entered a special appearance in plaintiff's separate maintenance action, limited to a motion to dismiss on the grounds that no personal money decree for payment of alimony could be entered against him since he had not been personally served by process issued by the Illinois court. Plaintiff amended her complaint by inserting an allegation that defendant owned certain real estate located in Logan county. She prayed

that her action should proceed as an action *in rem* against the real estate and that any amount of alimony that might be decreed her, should be secured by impressing a lien on defendant's real estate in this State. She further prayed that if payment should not be made as ordered, then such real estate be sold to satisfy the decree. Defendant's motion to dismiss was overruled. Thereupon a rule was entered directing him to plead to plaintiff's complaint by December 31, 1941. On the latter date, he filed, in the Illinois proceeding, his answer, counterclaim and plea of *puis darrien continuance*. The Nevada divorce proceedings were set forth in the counterclaim and plea as a bar to plaintiff's action. After a hearing of evidence the chancellor held the Nevada proceeding insufficient either as part of a pleading or as evidence to bar plaintiff's right to separate maintenance. The decree fixed the amount of the monthly payments, the solicitor's fees and impressed a lien upon defendant's real estate to secure the payment of the same. It directed that if the same were not paid, an execution should issue. During the course of the proceeding, the chancellor overruled defendant's motion to dismiss plaintiff's complaint and sustained plaintiff's motion to strike those parts of defendant's answer and counterclaim which set forth the Nevada proceeding. Plaintiff's motion to strike challenged the Nevada proceeding on the grounds defendant did not have a *bona fide* domicile in Nevada when the decree was entered and that he had withheld from the Nevada court material information as to the status of the separate maintenance proceeding pending in Illinois. Defendant's notice of appeal is from the final decree entered and the orders entered on the several motions.

Section 1 of article IV of the Federal constitution directs: "Full Faith and Credit shall be given in each State to the public Acts, Records and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records

and Proceedings shall be proved and the Effect thereof."
By the act of May 26, 1790, (28 U. S. C. A., chap. 17,
687,) Congress exercised the power conferred and pro-
vided for the certification of such proceedings and directed
that judgments "shall have such faith and credit given to
them in every court within the United States as they have
by law or usage in the courts of the state from which they
are taken."

The conflict of policy between this State and Nevada
as to what shall constitute grounds for divorce is con-
trolled by *Williams* v. *North Carolina,* 317 U. S. 287, and
the fact that defendant was granted a divorce in Nevada
on grounds not recognized by the laws of this State is of
no consequence on the question presented. Likewise, the
doctrine announced in *Haddock* v. *Haddock,* 201 U. S.
562, 50 L. ed. 867, that the credit to be attached to a de-
cree of divorce entered by the courts of a sister State was
dependent in some measure upon which of the parties was
at fault, has, if it ever has been applied as the law of this
State, been removed by the *Williams case.* However, there
is one principle involved in the application of the full-faith-
and-credit clause in divorce actions which has been the
law of this State and which was not passed upon in the
*Williams case.* The rule referred to is that a divorce de-
cree entered in a sister State on constructive service is not
valid if the one obtaining the divorce was not *bona fide*
domiciled within the jurisdiction of the court granting the
divorce. The opinion in the *Williams case* rests upon the
fact of *bona fide* domicile having been established in Ne-
vada. Ruling on such question is excluded by the state-
ment of the court that if the case had been submitted and
tried on the issue of petitioners' *bona fide* domiciles in Ne-
vada, it would have been quite a different problem. It was
said: "We have no occasion to meet that issue now and
we intimate no opinion on it. However it might be re-
solved in another proceeding, we can not evade the con-

stitutional issue in this case on the easy assumption that petitioners' domicile in Nevada was a sham and a fraud. Rather we must treat the present case for the purpose of the limited issues before us, precisely the same as if petitioners had resided in Nevada for a term of years and had long ago acquired a permanent abode there."

From the foregoing we conclude that nothing that is decided in the *Williams case* forecloses this court's inquiry into the question of domicile. In *Bell* v. *Bell,* 181 U. S. 175, 45 L. ed. 804, it was held that no valid divorce from the bond of matrimony can be decreed on constructive service by the courts of a State in which neither party is domiciled. Also *Streitwolf* v. *Streitwolf,* 181 U. S. 179, 45 L. ed. 807. A like ruling by inverse reasoning was announced in *Atherton* v. *Atherton,* 181 U. S. 155, 45 L. ed. 794. There a man with a domicile in Kentucky, which was also the matrimonial domicile, obtained a divorce in that State on constructive service, the wife being domiciled in New York. It was held that the courts of New York were required to give full faith and credit to the Kentucky decree. In consonance with those holdings this court has announced the same doctrine. (*Dunham* v. *Dunham,* 162 Ill. 589, *Field* v. *Field,* 215 Ill. 496.) In some of the cases cited and others that might be added it was held that the full-faith-and-credit clause did not prevent an inquiry into the jurisdiction of the court which rendered the judgment or decree notwithstanding the decree contained recitals finding jurisdictional facts.

Attention is called to the language of the *Williams case* where it is said that the full-faith-and-credit clause exacted "not some but full" faith and credit to the judgments and decrees of another State and from this it is argued that full credit to a foreign decree necessarily means findings of fact on jurisdictional matters. In the light of other language used in the *Williams case* we are convinced that this question was not determined in that case. Since it was

not, this court will follow rules announced by the United States Supreme Court in cases that were decided prior to the *Williams case* and as applied by the previous decisions of this court.

The fact that the transcript of the proceedings of the Nevada court employs the word "residence" rather than the more commonly used term "domicile" does not lessen the requirement that there shall be an established domicile. (*Williams* v. *North Carolina,* 317 U. S. 287, 87 L. ed. 189, 63 S. Ct. 207.) The statute of Nevada which prescribes the requirements as to domicile uses the word "residence." The Supreme Court of Nevada in *Latterner* v. *Latterner,* 51 Nev. 285, 274 Pac. 194, in construing the statute of that State said: "The residence required was determined to be of a character denoting a present intention on the part of the one claiming it to make the county in which the suit was instituted the person's home, at least for an indefinite period." To the same principle, see *Fleming* v. *Fleming,* 36 Nev. 135, 134 Pac. 445; *Walker* v. *Walker,* 45 Nev. 105, 198 Pac. 433; *Lamb* v. *Lamb,* 57 Nev. 421, 65 Pac. (2d) 872.

The facts in reference to defendant's domicile in Nevada are as they appear in the transcript of the Nevada proceeding. Neither party introduced any evidence on that question during the hearing in Illinois. The question arises on motion to strike the transcript of the Nevada proceeding from defendant's answer and counterclaim and on its sufficiency as evidence.

The complaint contained the allegation that he was then and had been "for more than six weeks last past and immediately preceding the commencement of this action * * * a resident of the City of Reno, County of Washoe, State of Nevada and * * * actually and physically present." The evidence introduced in the Nevada court, all of which is incorporated into the transcript, shows that defendant was physically present in Washoe county from

the date he registered at the Reno hotel, June 30, 1941, to the date he started for Illinois, August 26. When he commenced his suit August 13, he had been in the State two days over the necessary six weeks as required by the Nevada statute. The decree, after setting forth the facts relative to constructive service on the defendant (plaintiff in this action) recites: "and her default having been duly entered, said action coming regularly on for trial on the Complaint of the plaintiff and default of the defendant, and evidence being thereupon introduced in said cause, and the Court being fully advised in the premises and having duly considered the law and the evidence, finding therefrom that the allegations of plaintiff's Complaint are true and fully sustained by the evidence, and concluding therefrom that plaintiff is entitled to a Decree of absolute divorce from defendant, and having rendered his decision in favor of plaintiff and against the defendant, * * *."

It will be observed that the complaint contained no allegation as to the period of time defendant expected to reside in Nevada nor his intent as to making it his permanent home. In addition to testifying to his continuous presence in Nevada from June 30 to August 26, he did testify that he intended to stay in Reno and make it his home "for an indefinite period of time." The decree is barren of any finding as to jurisdictional facts other than that "the allegations of plaintiff's complaint are true and fully sustained by the evidence." The reference to the complaint does not supply the essential element of intent of defendant to make Reno his home, for the complaint contained no such allegation.

In obeying the command of the full-faith-and-credit clause we are guided by the act of Congress which implements the constitutional provision. It directs that the decrees and judgments of State courts shall be accorded the same faith and credit in the courts of other States that

they have by the law or usage in the courts of the State of origin.

In *Latterner* v. *Latterner,* 51 Nev. 285, 274 Pac. 194, defendant appeared and filed an answer denying the allegation in the complaint that plaintiff had resided in the county where the suit was filed for more than three months immediately preceding the commencement of the action. Evidence was heard, the nature of which is not disclosed by the opinion. The trial court made the statement that "the court did not find the plaintiff's residence was in good faith, but only that he had been actually and corporeally present in Douglas county for three months immediately before the action was begun." It was held that a mere corporeal presence in the county was not sufficient and in reference to the court's failure to make a finding upon the good faith with which the residence was established said: "The trial court should have considered the evidence bearing upon the good faith of respondent's residence * * *. Furthermore, the court, having failed to find plaintiff to be a *bona fide* resident, was without jurisdiction to grant him a decree of divorce." The judgment awarding a divorce was reversed. As we understand this decision it would follow that, by the law of Nevada, defendant's judgment granting him a divorce would be of no effect in that State.

Assuming, as we have, that the record presents an issue as to defendant's domicile in Nevada which the courts of this State may inquire into, we pass from the consideration of the legal aspect of the sufficiency of the decree to the question of fact as to whether the evidence in the transcript was sufficient to prove defendant's domicile in that State. What has been said in reference to the decree might well dispose of the case, but the public importance of the question leads to a discussion of the question of fact.

In Beale's Conflict of Laws, vol 1, section 110.1, in discussing the law of domicile as applied to marriage and

divorce and the interest of the State in the matrimonial status of its domiciliary, it is said: "It may be argued that domicile is a technical affair and often has no relation to the community in which a man really lives and of which he forms a part. This, however, is true only in the exceptional case. In the great mass of cases a man's domicile is where he actually lives and where he takes part in the life of the community. * * * It is true that the domicile has no more interest in the marital affairs of a person who is not in fact living there and has only a nominal connection with it than any other State, but it is especially important in cases of jurisdiction that there should be established a rule that is clearly defined and easy of application. The general rule is that the marital affairs of a person who lives in a community are of interest to the community as well as to himself. A place which is merely the temporary residence of a man has no particular knowledge of his marital experiences nor interest in their continuance. His own community, however, has such an interest and is to be protected in that interest by a general rule which will preserve to it the control over his marital status." In the *Williams case* it is said that domicile creates a relationship to the State.

There is no evidence as to where defendant resided between the date of December 23, 1941, when he obtained his divorce in Nevada and the date of the hearing in Illinois, March 23, 1943. There is a statement in defendant's brief that he continued his residence in Nevada but there is. no evidence to support such statement. The only material facts proved are as stated, that defendant was corporeally present in Reno, Nevada, forty-four days before he commenced his action and that he testified he intended to stay in Reno for an "indefinite period of time." There is no proof that the defendant did any of the things that a person ordinarily does preparatory to a change of domicile from one State to another, or that he removed any articles

with him, or that he surrounded himself in his new home with anything that is usually brought into a new home, or that he in any way attached himself to or became a part of the community where he took up his new abode. As far as the evidence shows, there is nothing that would distinguish his presence in Reno from that of a transient registered for a temporary stay at a hotel or procuring a room in a private home.

In the *Williams case* it was said that it could not be assumed that the domicilies in Nevada were a sham and a fraud, but in this case, by reason of the paucity of evidence it is not necessary to indulge such assumption to arrive at the conclusion of fact that the evidence does not prove that defendant established a *bona fide* domicile in Nevada. There is no basis for fair and reasonable inferences to be drawn from the evidence that will support any different conclusion. The presumption of sufficiency of supporting evidence with which decrees of another court are clothed is overcome by the facts appearing on the face of these proceedings.

The foregoing conclusions are in accord with the previous holdings of this court in *Dunham* v. *Dunham*, 162 Ill. 589, *Field* v. *Field*, 215 Ill. 496, *Knowlton* v. *Knowlton*, 155 Ill. 158, *Chamblin* v. *Chamblin*, 362 Ill. 588, and other cases. The Supreme Court of Pennsylvania in *Commonwealth ex rel. Esenwein* v. *Esenwein*, 348 Pa. 455, 35 Atl. 2d 335, under similar facts held that *Williams* v. *N. Carolina*, did not decide the faith and credit that the courts of a sister State should give to a decree of divorce entered in another State where neither of the parties were domiciled in such State.

The further contention was made before the chancellor and is renewed on this appeal that defendant did not apprise the Nevada court of all the details in reference to the proceeding pending in Illinois. It is argued that such withholding of information on such matters was a fraud upon the Nevada court. Defendant testified in the Nevada

proceeding that his wife had a separate maintenance action pending in Illinois but stated he had not received notice of it. He did not disclose to the court that the Illinois proceeding was commenced five days before his suit was filed, or that his motion to dismiss the action in the Illinois court had been overruled, or that the court had entered a rule against him to plead by December 31. He did not disclose to the Nevada court that he expected to plead the Nevada proceeding in bar of plaintiff's Illinois action.

The fact that the Illinois action was started before the Nevada action does not in itself give it preference or priority over the Nevada case. (*Dunham* v. *Dunham,* 162 Ill. 589.) In view of the conclusions reached on the question of domicile and under the authority of *Dunham* v. *Dunham,* we are of the opinion that the defendant was guilty of practicing fraud upon the Nevada court in withholding information in reference to the Illinois action and that proof of such fraud furnishes grounds to deny full faith and credit to the Nevada proceeding.

Plaintiff contends that the amendment to her complaint constituted the action one *in rem* and that since it pertained to the establishment and enforcement of a lien on real estate located in Illinois, the full-faith-and-credit clause was not applicable. The amendment referred to plaintiff's remedy for relief, if it should be found she was entitled to support and maintenance. Preliminary to the allowance of any support money to which the lien could attach, it was necessary for plaintiff to establish her marriage status. If the Nevada proceeding was to be given the effect of dissolving the marriage relation, then plaintiff was not defendant's wife and of course not entitled to alimony. The opinion in the *Williams case* agrees with the reasoning in *Haddock* v. *Haddock,* 201 U. S. 562, 50 L. ed. 867, that the historical view that a proceeding for divorce was an action *in rem* was no longer the law. The opinion adds that it does not aid in the solution of the problem arising

under the full-faith-and-credit clause to label a divorce proceeding an *in personam* action. In that opinion it is reasoned that the interest which a State has in the marriage status of its domiciliaries makes a divorce decree more than an *in personam* judgment, that it involves the marital status of the parties. As to the effect and operation of the Nevada proceeding under the full-faith-and-credit clause, this proceeding cannot be labeled an action *in rem*.

The decree in this case entered March 23, 1943, directed defendant to pay plaintiff $100 per month and her solicitor's fees in the sum of $500. These amounts were fixed upon plaintiff's evidence that defendant had $80,000 or more in a bank of Montreal, that he owned 200 shares of stock in Swift & Company, two or three hundred shares in Diamond Match Company, about 200 shares of United States Pipe & Foundry Company stock, and other shares in the Ohio Match Company, and a locomotive company. She testified as to his former occupation and fixed his age at 65 and hers at 56. She stated that prior to her marriage she was engaged in teaching school. She estimated that in addition to rent, taxes and repairs on the home where she resided it would take $100 per month to support and maintain her according to their station in life. Defendant's counsel did not cross-examine and no counterevidence was offered. Defendant did not appear as a witness. A few days after the decree was entered defendant filed a motion and supporting affidavit to set it aside. He does not deny that the quantity and value of his property was as testified to by plaintiff or that $100 per month would be necessary to meet her needs. The substance of the charge is that plaintiff fraudulently concealed from the court the extent and value of her property and her income. In fixing the payments the chancellor should have considered the amount of the property and income of both as well as their ages, health, past and pres-

360

erit habits, social conditions and circumstances. (*Decker* v. *Decker,* 279 Ill. 300.) But defendant had the opportunity on the hearing to present evidence of the matters included in his affidavit. His explanation for not presenting his proof at that time is, as set forth in his affidavit, that he expected to rely entirely upon the validity of, and the full faith and credit to be given to, his Nevada decree. To countenance such excuse would be to encourage the trial of cases by piecemeal, and permit a party to an action to defend on one ground and when it was decided against him to set it aside and try another defense. The law does not countenance such practice. The fact defendant did not anticipate plaintiff's evidence on property and income is not sufficient to warrant setting the decree aside on the grounds of fraud. Fraud, if proved, would vitiate the decree but the facts set forth in defendant's affidavit are not sufficient to sustain such an order.

The decree of the circuit court is correct and is affirmed.

*Decree affirmed.*