(No. 27461.—

ETHEL W. ATKINS, Appellee, vs. WALTER B. ATKINS,
Appellant.

*Opinion filed March 20, 1946*

MICHAEL ECKSTEIN, of Springfield, for appellant.

HAROLD F. TRAPP, of Lincoln, for appellee.

Per CURIAM: On August 8, 1941, appellee, Ethel W. Atkins, filed this suit in the circuit court of Logan county, under the statute, (Ill. Rev. Stat. 1945, chap. 68, par. 22,) to compel her husband, the appellant, to contribute a reasonable amount to her support and maintenance while they were living separate and apart. Appellant's principal defense was that he had procured a divorce in Washoe county, Nevada, and that, since the bonds of matrimony had been severed, there could be no allowance under the statute for separate maintenance. The chancellor overruled such defense and awarded appellee support money and solictor's fees. One of the questions presented on appellant's former appeal to this court ( 386 Ill. 345,) was whether the Nevada decree was entitled to full faith and credit in this action and thereby operated as a bar to appellee's claim for support and maintenance. The decree of the trial court was affirmed in an opinion filed at the March term, 1944.

*Certiorari* was granted by the Supreme Court of the United States and at the October term, 1945, a memorandum opinion was filed which vacated the judgment of this court and remanded the cause "to enable it [this court] to re-examine its decision in the light of *Williams* v. *North Carolina,* 325 U. S. 226, 89 L. ed. (Adv. 1123,) 65 S. Ct. 1092, 157 A.L.R. 1366, and *Esenwein* v. *Pennsylvania,* 325 U. S. 279, 89 L. ed. (Adv. 1152,) *Busey* v. *District of Columbia,* 319 U. S. 579, 580, 87 L. ed. 1598, 1599; *New York ex rel. Whitman* v. *Wilson,* 318 U. S. 688, 690, 691, 87 L. ed. 1083-1085, and cases cited; *State Tax Commission* v. *Van Cott,* 306 U. S. 511, 515, 516, 83 L. ed. 950, 953." 325 U. S. ——, 90 L. ed. adv. op. 29.

The *Busey, Wilson* and *Van Cott cases* do not deal with the effect to be given judgments or decrees of sister States

under the full-faith-and-credit clause. They are cases where, pending review in the Federal Supreme Court, there had been a change in law or fact which necessitated a remandment of the cause to the court from which the appeal had been taken for a reconsideration in the light of such supervening change. In the *Van Cott case,* it was said: "In determining what justice does require, the Court is bound to consider any change, either in fact or in law, which has supervened since the judgment was entered. We may recognize such a change, which may affect the result, by setting aside the judgment and remanding the case so that the state court may be free to act. We have said that to do this is not to review, in any proper sense of the term, the decision of the state court upon a non-federal question, but only to deal appropriately with a matter arising since its judgment and having a bearing upon the right disposition of the case."

It will be observed that neither the opinion nor order of remandment of the Federal Supreme Court specified the changes "in fact or in law which have supervened since the judgment was entered" which call for a reconsideration of the cause. When our former opinion was filed, the first *Williams case* (*Williams* v. *North Carolina,* 317 U. S. 287, 87 L. ed. 189,) had been decided. Since then the Federal Supreme Court has had occasion to consider the *Williams case* on a basis of fact different from that in the first case, and to pass upon the *Esenwein case.* We assume the Federal Supreme Court concluded that its decisions in the second *Williams case* and *Esenwein case* constituted the supervening cause for which a re-examination of the case was ordered.

While the cause was pending in the Supreme Court of the United States, appellant filed three affidavits which appellee has moved this court to reject on the ground that evidence cannot be introduced before a court of review in this way. Two of such affidavits were signed by resi-

dents of Nevada who had known appellant since July, 1941. The other was signed by appellant. They were dated in July, 1945. The evident purpose was to show by these affidavits that appellant had continued to reside in Reno, Nevada, subsequent to the entry of his divorce decree in 1941, that he was still residing there, that he had voted at elections held in that city and performed other acts consistent with having an established residence and domicile in Nevada.

There was nothing in the evidence when the cause was reviewed on the first appeal to show whether appellant continued to live in Nevada or had gone to another State. The first time any record before this court made any reference to such fact was when appellant filed his additional brief in this cause after its redocketing following the remandment. The affidavits are set forth in his brief with the statement that they were incorporated in the brief filed in the Supreme Court of the United States.

The facts stated in the affidavits, if admitted in evidence, would be relevant to the question of appellant's good faith in the establishment of a domicile in Nevada. But the constitution of this State forbids this court exercising original jurisdiction in any cases except those relating to revenue, *mandamus* and *habeas corpus*. In all cases other than the three named, the jurisdiction is appellate, only. (Const. Ill. art. VI, sec. 2.) This provision has been construed to mean that in the review of a record the court is not privileged to permit either party to introduce evidence into the record which was not made a part of the record while the cause was in the trial court.

Section 92 of the Civil Practice Act (Ill. Rev. Stat. 1945, chap. 110, par. 216,) undertook to introduce some new features into the practice before the courts of review of this State. The section specified certain things which a reviewing court might in its discretion permit to be done. By subparagraph (d,) a court of review was authorized

to permit such further testimony to be taken in, or presented to, the reviewing court as it might deem necessary, where evidence had been erroneously excluded or where there had been an omission of proof at the trial of some fact which, under the circumstances of the case, might subsequently be proved without involving any question for a jury, and without substantial injustice to either.

After *Schmidt* v. *Equitable Life Assurance Society,* 376 Ill. 183, had been docketed in this court, one of the parties undertook to supply evidence to correct a material defect in the record by the introduction of affidavits on motion. It was held that subparagraph (d), insofar as it undertook to authorize the introduction of evidence in a court of review that had not been made a part of the record when the cause was pending in the trial court, was unconstitutional. If the affidavits should be considered as evidence, it would be assuming original jurisdiction in reference to such affidavits, an act which the constitution forbids in this kind of case.

The rejection of appellant's attempt to show by affidavits that he established his domicile in Nevada in good faith deprives him of no constitutional right. His Nevada decree was entered December 23, 1941, and on December 31 following he pleaded it in bar of appellee's action. This cause was not tried until March, 1943. In the meantime, appellee, by motion, challenged the sufficiency of appellant's decree on the ground that the domicile had not been established in good faith in Nevada. In November, 1942, the chancellor ruled on appellee's motion and outlined his views as it then appeared on the face of the record, which views were in accord with his final holding. Appellant appeared by counsel at the final hearing of evidence and interposed several objections to appellee's evidence. Such objections were founded on the contention that the Nevada decree was valid. Appellant elected to rest his claim upon the evidence that appeared in the tran-

script from the Nevada court. In view of the constitutional provision thus limiting the jurisdiction of this court in cases of this character, the motion of appellee to reject the affidavits will be sustained.

In the former consideration of this case we perceived that the first *Williams case* was distinguishable from this on a very important question of fact. It was noted that the opinion in the *Williams case* was founded upon the admission that the parties who had obtained a divorce in Nevada had established a domicile in that State. In the instant case, there was a controverted question as to whether appellant had a *bona fide* domicile in Nevada at the time he started his suit or at the time the decree of divorce was granted. If the evidence had warranted the conclusion that appellant had a *bona fide* domicile in Nevada, the opinion in the first *Williams case* would have been controlling and full faith and credit would have been awarded the Nevada decree. It was, at least, impliedly held in our former opinion that the credit to be attached to the Nevada decree depended solely upon the fact of appellant's domicile in that State and that any question as to whose fault precipitated the divorce was not relevant on the jurisdictional question. Concluding, as we did, that the chancellor was correct in his analysis of the evidence, in holding that appellant did not establish a *bona fide* domicile in Nevada, we applied the law as previously announced by this court in *Dunham* v. *Dunham*, 162 Ill. 589, *Field* v. *Field*, 215 Ill. 496, and other cases. It was held that since appellant was not domiciled in Nevada, the court granting the decree of divorce was without jurisdiction and the decree entered in that court was not entitled to full faith and credit in this proceeding.

As we analyze the opinion of the second *Williams case*, and the *Esenwein case*, they hold (a) that the power of a court to grant a divorce is founded on domicile, and (b) that the full-faith-and-credit clause operates only with

respect to judgments rendered by a court whose jurisdiction either as to the subject matter or the person is not impeached. In the *Williams case*, it was said: "No state need give full faith and credit to a 'void' decree. A decree rendered by a court without 'jurisdiction' is 'void.' No state court has 'jurisdiction' to grant a divorce unless one of the parties is 'domiciled' in the state."

Adopting these fundamental principles as a guide, we need not, under the facts of this case, pursue our re-examination into the realm of possibilities not supported by facts, but shall restrict our inquiry to the question of whether appellant had a *bona fide* domicile in Nevada when he invoked the jurisdiction of that court to grant him a divorce.

The parties were married in this State on January 16, 1934, and lived together as husband and wife until May 8, 1940.. During such period they resided in the city of Lincoln, where appellee continued to reside after their separation. On June 30, 1941, appellant registered at a hotel in Reno, and on August 13, following, he filed his suit for divorce in the district court of Washoe county, Nevada. Appellee was not personally served in Nevada and did not appear in that suit either in person or by attorney. Constructive service was had upon her in Illinois by service of a copy of the Nevada complaint. On August 25, 1941, appellant moved his belongings from the hotel to a private home. The following day he left Nevada and returned to Illinois. While here he entered a special appearance on September 13 in this action, limited to the purpose of moving to dismiss appellee's complaint on the ground that he had not been personally served with process and that a separate maintenance action could not be maintained without such service. Thereafter, appellee amended her complaint and added the prayer that appellant's real estate, located in the city of Lincoln, be impressed with a

lien for support money. The motion accompanying the special appearance was overruled December 11, 1941, and on that date appellant was ordered to plead by December 31.

Appellant returned to Nevada November 11, and following the entry of the decree on December 23, he pleaded it in his answer in the Illinois court, filed December 31. The motion of appellee to strike the answer was sustained and appellant repleaded the Nevada proceedings by answer and counterclaim. This included an authenticated copy of the complaint, the decree and a transcript of the evidence. Appellant might have offered the Nevada decree as a bar to this action and it would have been *prima facie* evidence that the Nevada court had jurisdiction and power to enter it. The burden of impeaching the decree for want of jurisdiction rested on appellee. The course pursued by appellant placed the whole matter before the chancellor to be considered by him in connection with the other facts and circumstances.

Comparison of the substance of the evidence in the transcript introduced in this case shows a striking similarity, as to the questions and answers relevant to appellant's domicile in Nevada, to the transcript of evidence covering the same subject in *Esenwein* v. *Pennsylvania,* 348 Pa. 455, 35 Atl. 2d 335. The *Esenwein case* was affirmed by the Federal Supreme Court and is one of the cases cited in the memorandum opinion. There is this difference, in that, in the *Esenwein case,* Esenwein, who had obtained the divorce in Nevada, left that State immediately and at the time of the Pennsylvania hearing was domiciled in Ohio. The Supreme Court of Pennsylvania observed that his leaving Nevada so soon after the decree was evidence of bad faith, and that when he testified on the hearing to his domicile in that State, he was guilty of practicing fraud on the court. In discussing the decision of the Pennsylvania court, the Federal Supreme Court said: "The Full Faith and

Credit Clause placed the Pennsylvania courts under duty to accord *prima facie* validity to the Nevada decree. The burden is on the litigant who would escape the operation of a judgment decreed in another state. Pennsylvania recognized that burden, but its courts were warranted in finding that the respondent. sustained her burden of impeaching the foundation of the Nevada decree on the jurisdictional prerequisite of bona fide domicil. The Pennsylvania Supreme Court rightly indicated that if merely the Nevada decree had been in evidence, it was entitled to carry the day. But the Supreme Court found that on the entire showing there was convincing countervailing evidence to disprove petitioner's intention to establish a domicil in Nevada. The Pennsylvania courts have viewed their Constitutional duty correctly. It is not for us to retry the facts, and we can not say that in reaching their conclusion the Pennsylvania courts did not have warrant in evidence and did not fairly weigh the facts."

We do not believe that proof of the immediate change of domicile from the jurisdiction where the sister State decree was entered is the only means by which bad faith in the establishment of the domicile in such State may be shown. In the *Esenwein case* such evidence was convincing, but we find the facts of this case are, on the question of the lack of good faith, of equal force.

Appellee contends that the decree of the trial court should be sustained on another ground. Attention is called to the amendment to the complaint in which real estate owned by appellant, located in this State, was specifically described. The prayer added by the amendment was that allowance of support money and attorney's fees be impressed as a lien upon appellant's property in this State. It is said that the full-faith-and-credit clause does not purport, even when a *bona fide* domicile of the plaintiff exists in a sister State, to empower the courts of another State to destroy property rights of a resident defendant of this

State who was a party in the foreign proceeding by constructive service only. In a concurring opinion in the *Esenwein case*, a statement is made which tends to support such proposition. Having held that the decree of divorce was not entitled to full faith and credit, we will not pass upon the proposition made by appellee.

We have not re-examined the point made in our first opinion to the effect that the Nevada decree was not valid under the decisions of the Supreme Court of that State, and therefore, was not valid here. Such question was not raised in the *Esenwein case*, or the second *Williams case* and, therefore, we will not re-examine it now. However, we adhere to our former conclusion on that point.

*Decree affirmed.*