(No. 32308.—

ROBERT R. LUDWIG, Appellee, *vs.* BERNICE LUDWIG, Appellant.

*Opinion filed September 17, 1952.*

WILLIAM S. SCHWAB, of Chicago, for appellant.

RUSSELL W. KEENEY, and GORDON MOFFETT, both of Wheaton, for appellee.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

Defendant, Bernice Ludwig, has prosecuted this appeal from a decree entered by the circuit court of Du Page County awarding plaintiff, Robert R. Ludwig, a divorce from defendant on the grounds of desertion, and vesting plaintiff with full title to certain real property formerly held by the parties in joint tenancy.

The propriety of the decree of the circuit court depends primarily upon the validity and legal effect of a prior divorce decree entered by a Nevada court granting defendant a divorce from plaintiff on the grounds of mental cruelty, and upon the nature of defendant's interest in the property held in joint tenancy.

From the record it appears that plaintiff and defendant were married in Chicago on February 14, 1932. In 1935 plaintiff, with his own funds acquired before marriage, purchased their residence property situated in Wheaton, Du Page County, Illinois. Although title to the property was taken in the names of plaintiff and defendant jointly, the attorney explained to defendant at the time of the con-

veyance that title was taken in that manner for convenience so as to avoid the expense of probate in case either party died, and to insure defendant survivorship rights if plaintiff died during their marriage.

Despite the fact that plaintiff objected to defendant's working, since he earned a good income which was made available to defendant, she substituted as secretary for Earle B. Tilton during parts of the years 1937, 1938 and 1939. In July, 1939, defendant first informed plaintiff that she wanted a divorce. Plaintiff endeavored to dissuade her but she was insistent, and after repeated conversations she persuaded him to see her attorney in Chicago, who, in turn, unavailingly urged plaintiff to sign certain papers with reference to the divorce.

According to the uncontroverted facts, corroborated by the testimony of defendant's parents who lived in the vicinity and saw the parties frequently, plaintiff treated defendant very well, and provided most generously for her. However, on August 26, 1939, without any provocation, defendant left plaintiff and went to live in Chicago.

According to her testimony, defendant went to Nevada to get' her divorce early in November, 1939, and a divorce decree on the grounds of mental cruelty was entered by the Nevada court on February 16, 1940. Two days later, however, defendant was seen in Chicago, and during the month of February, 1940, she wrote her mother from Chicago that she had returned to the city. Defendant remained there until March, 1941, when she went to Nevada to marry Earle B. Tilton immediately after he had secured his Nevada divorce. She wrote her folks that she had "gone through a marriage ceremony." Defendant and Tilton returned to Illinois directly, and then moved to Wisconsin where they are presently residing.

In May, 1941, defendant's parents moved in with their son-in-law, plaintiff herein, and they have made their home together since that time. Plaintiff has at all times paid the

taxes and all expenses incidental to the maintenance of the controverted property.

In the fall of 1947, Judge Samuel Perry, who was then counsel for plaintiff, endeavored to get a quitclaim deed from defendant, since her name appeared of record as a joint tenant. Judge Perry's testimony reveals a visit with Mrs. Tilton in her home in Milwaukee, Wisconsin. In an extended interview, defendant unqualifiedly disclaimed any title or interest in the property presently in dispute. She said, "I took what I wanted. By agreement with him I went to the safety vault and I took what I thought was mine and I have never heard from him since, and this is the first I heard of any property and I have been divorced and I am not interested there any more." However, she suggested that if her signature was necessary on any papers plaintiff could make her a monetary offer, but she refused to sign anything.

In June, 1950, plaintiff instituted this proceeding for divorce on the grounds of desertion, and requested the court to vest him with title to the controverted property. On the basis of substantially the foregoing evidence, the circuit court entered a decree granting plaintiff the divorce and directing defendant to convey her interest in the premises to plaintiff.

Inasmuch as title is directly put in issue a freehold is involved (*Holmstedt* v. *Holmstedt,* 383 Ill. 290,) and this court has proper jurisdiction of the appeal. In determining whether the circuit court erred in entering the aforementioned decree we shall consider first whether this divorce proceeding was barred by the prior Nevada decree.

The principles underlying the validity of out-of-State divorce decrees have recently been reviewed and promulgated anew by both this court and the Supreme Court of the United States. *Williams* v. *North Carolina,* 325 U.S. 248; *Esenwein* v. *Pennsylvania,* 325 U.S. 279; *Atkins* v. *Atkins,* 393 Ill. 202.

According to our determinations, which are clearly consistent with those of the Supreme Court of the United States, the introduction of an out-of-State divorce decree constitutes *prima facie* evidence of its validity. (*Esenwein v. Pennsylvania; Atkins v. Atkins.*) However, if the litigant who would escape the operation of the out-of-State decree sustains the burden of impeaching the jurisdictional prerequisite of *bona fide* domicile, then the decree will be deemed neither valid nor entitled to full faith and credit. *Esenwein v. Pennsylvania; Atkins v. Atkins.*

In the *Atkins case,* this court affirmed its former opinion on this issue in the same case, (386 Ill. 345,) in the light of the decisions of the Supreme Court of the United States, which were interpreted as holding that the power of a court to grant a divorce is founded on domicile, and that the full-faith-and-credit clause operates only with respect to judgments rendered by a court whose jurisdiction, either as to subject matter or the person, is not impeached. With reference to the case before it the court stated at page 207 : "It was, at least, impliedly held in our former opinion that the credit to be attached to the Nevada decree depended solely upon the fact of appellant's domicile in that State. * * *. It was held that since appellant was not domiciled in Nevada, the court granting the decree of divorce was without jurisdiction and the decree entered in that court was not entitled to full faith and credit in this proceeding."

Thus the court, in determining whether full faith and credit should be given to the out-of-State divorce decree, may properly inquire into the *bona fide* character of the domicile of the party who secured that divorce. In the *Esenwein case* the court noted that the party procuring the Nevada divorce left that State immediately after the decree, and held that this was evidence of bad faith disproving an intention to establish a Nevada domicile. In the *Atkins case* the court stated that such conduct as found in the *Esenwein case* was not the only means by which bad faith

in the establishment of the domicile in the sister State may be shown, and that the facts in the case before it were of equal force on the question of lack of good faith.

The party who procured the Nevada divorce in the *Atkins case* resided in Illinois and went to Reno where he registered in a hotel on June 30, 1941. He filed a divorce action on August 13 in which his wife was served in Illinois by constructive notice. On August 25 he moved his effects from the hotel to a private home, but left Nevada the following day to return to Illinois. He went back to Nevada on November 11, 1941, and his divorce decree was entered on December 23, 1941. This decree was pleaded in his answer in an Illinois divorce proceeding instituted by his wife. Under those circumstances the court held that there was no *bona fide* Nevada residence and that decree was not recognized in Illinois.

In the first opinion, *Atkins v. Atkins,* 386 Ill. 345, the court fully examined the question of what constitutes domicile and noted that there was no proof that the husband did any of the things that a person ordinarily does preparatory to a change of domicile from one State to another, or that he removed any articles with him, or that he surrounded himself in his new home with anything that is usually brought into a new home, or that he in any way attached himself to, or became a part of, the community where he took up his new abode. The court, on page 357, stated: "As far as the evidence shows, there is nothing that would distinguish his presence in Reno from that of a transient registered for a temporary stay at a hotel or procuring a room in a private home."

The same comment is appropriate in the instant case where defendant not only left Nevada immediately after she secured her divorce decree, as did the party procuring the decree held invalid in the *Esenwein case,* but her conduct and lack of general preparation for an extended stay in Nevada evidenced no intention of establishing a *bona fide*

domicile there. On the contrary, the evidence reveals defendant deliberately attempted to circumvent the more stringent requirements of the Illinois divorce laws and procure a Nevada decree under the flexible concept of "mental cruelty." She returned to Nevada only to go through a marriage ceremony with Earle Tilton after he procured his Nevada divorce, and then immediately left the State to establish residence in Wisconsin with her new husband.

Under these circumstances the *prima facie* evidence of a prior valid divorce, afforded by the introduction of the out-of-State decree, was successfully impeached by the evidence that defendant did not establish a *bona fide* domicile in Nevada, and therefore, that court was without jurisdiction to enter the decree. Consequently, the Illinois courts are not bound to give it full faith and credit, and it was not error for the circuit court herein to hold that the Nevada decree did not bar this proceeding.

Furthermore, the fact that the Nevada decree was entered some ten years before plaintiff instituted divorce proceedings in Illinois, does not operate to bar plaintiff's action, for lapse of time cannot remedy the lack of jurisdiction of the court entering the void decree, nor constitute such *laches* as would estop plaintiff from proceeding with his action. Plaintiff at no time recognized the validity of the Nevada decree, nor acted upon it by remarrying, as did the plaintiff in *Parmelee* v. *Hutchins,* 238 Mass. 561, cited by defendant.

Plaintiff adduced evidence that defendant deserted him without cause, and that such desertion continued for over ten years preceding the filing of the complaint. Therefore the circuit court properly granted plaintiff a divorce from defendant on the grounds of desertion.

With reference to the propriety of that portion of the decree ordering defendant to execute a quitclaim deed conveying to plaintiff all right, title and interest in the con-

troverted property, defendant contends that even though plaintiff paid for the property and improvements with his own funds, where title is taken in joint tenancy by husband and wife, there is a presumption of a gift of the interest to the wife, and that interest may not be divested by the court.

In cases involving the establishment of resulting trusts where property is purchased and paid for by a husband but title is taken in the name of the wife, or in joint tenancy, the courts have stated that a resulting trust is not shown to exist unless it is established that it was not intended that the wife should take a beneficial interest, because under such circumstances there is a presumption that the property was transferred to the wife as a gift. *Kartun* v. *Kartun,* 347 Ill. 510; *Partridge* v. *Berliner,* 325 Ill. 253.

In the instant case this rebuttable presumption of a gift was overcome by the evidence of the intention of the parties. Not only was the property purchased and improved with plaintiff's own funds acquired before marriage, but at the time title was taken it was explained by an attorney and understood by defendant that the title was placed in that manner only to avoid the expense of probate in case either party died, and to insure defendant survivorship rights if her husband died during marriage. Defendant at no time regarded herself as having any interest in the property, as evidenced by her conduct and her refusal to believe that she had any such interest when Judge Perry requested her to sign a quitclaim deed to clear the record. Both parties regarded the property as belonging to plaintiff, who paid all the taxes, maintenance and improvements, not only during the brief period while defendant lived there, but during the ensuing years.

Under these circumstances it is apparent that the instant case is clearly distinguishable from *Stromsen* v. *Stromsen,* 397 Ill. 260, cited by defendant, both as to the facts and legal principles. That case involved a partition rather than

a divorce proceeding and the settlement of property rights, and the issue therein was whether there was an agreement not to partition property held in joint tenancy but paid for by the husband. The court held that the evidence established no such agreement, which, in any event, would have been merged in the conveyance, hence the premises could be partitioned. The court also held that the evidence was neither convincing nor sufficient to overcome the presumption that the wife's interest in both the lot and the improvements was a gift, therefore, the husband was not entitled to be reimbursed for improvements made thereon.

There is nothing contained in that decision which could be construed to hold that the presumption of a gift from husband to wife cannot be overcome by proper evidence of an understanding, between the parties at the time of the conveyance, that the property taken in joint tenancy is intended to belong to the party who paid for it, and that no gift is intended for the other joint tenant. Where such an intention is evidenced, as in the instant case, a resulting trust in the husband will be construed by the court as a matter of law, and the decision in the *Stromsen case* would not bar its establishment.

Similarly, the operative facts in *Holmstedt* v. *Holmstedt*, 383 Ill. 290, cited by defendant, are also distinguishable and that case is in no way determinative. The court therein refused to grant a divorce or to erect a resulting trust for the benefit of the husband where the property, purchased with the joint funds of the husband and wife, was taken in the wife's name, without any understanding respecting the interests of the parties, and the husband delayed some twenty-two years before asserting any interest in the premises.

The decree entered herein is in accordance with the law and the evidence and is affirmed.

*Decree affirmed.*