## In re Estate of Hugh Rush, Deceased.
## Rose Rush, Appellant, v. Joseph A. Carduff, Conservator of Estate of Mabel R. Rush, Appellee.

### Gen. No. 10,653.

Opinion filed April 20, 1953. Released for publication May 12, 1953.

JOHN G. PLAIN, of Aurora, for appellant.

SEIDNER & SEIDNER, of Chicago, for appellee; EMMANUEL JOHN SEIDNER, of Chicago, of counsel.

MR. PRESIDING JUSTICE DOVE delivered the opinion of the court.

Hugh Rush died on May 31, 1951 at Aurora, Illinois where he had resided for many years. In the settlement of his estate the probate court of Kane county entered an order finding that he left him surviving his widow, Mabel R. Rush; Joan H. Carduff, James J. Carduff and Richard Perkaus, his grandchildren, the children of Helen Rush Carduff, the deceased daughter of the said Hugh Rush and Mabel R. Rush, as his only heirs at law and next of kin. Upon an appeal to the circuit court a like order was entered and the record is before this court for review upon the appeal of Rose Rush.

The record discloses that on December 10, 1910 Hugh Rush and Mabel R. Rush were married and as a result of that marriage one child was born, a daughter, Helen Rush Carduff who died in 1942 leaving Joan H. Carduff, James J. Carduff and Richard Perkaus, her children; that on or about March 30, 1931 Mabel R. Rush was committed to the Elgin State Hospital at Elgin by the county court of Kane county, as an insane person and is now confined in the Manteno State Hospital for the insane at Manteno, Illinois; that prior to August 20, 1937 Hugh Rush maintained his residence and domicile at No. 720 Oak Avenue, Aurora, Illinois; that on August 20, 1937 the real estate at No. 720 Oak Avenue was conveyed to Hugh Rush who, at that time, was engaged in the operation of a Physicians and Nurses Exchange at his residence at 720 Oak Avenue; that in 1938 Rose Minard assisted Hugh Rush in the operation of said exchange and performed practical nursing in caring for the mother and step-father of the said Hugh Rush who were elderly people and who made their home at said 720 Oak Avenue.

The record further shows that some time prior to December 1939 Hugh Rush and Rose Minard agreed that Hugh Rush should go to the State of Nevada and there procure a divorce from his insane wife, Mabel

R. Rush, and that when said divorce was granted Hugh Rush and Rose Minard would be married and would continue to live at 720 Oak Avenue in Aurora and that she, Rose Minard, would continue to live at 720 Oak Avenue in Aurora while Hugh Rush went to Nevada for the purpose of procuring a divorce; that in pursuance to said agreement Hugh Rush did go to Carson City, Nevada in December 1939 and remained there for six weeks and on January 26, 1940, he, the said Hugh Rush, filed his complaint for divorce in the First Judicial District Court of the State of Nevada in the county of Ormsby, charging that his wife was insane and had been committed to the Elgin State Hospital at Elgin, Illinois; that on March 2, 1940 the District Court of Nevada entered a decree of divorce in favor of Hugh Rush; that while in Nevada, upon this occasion, Hugh Rush and Rose Minard corresponded and at his request Rose Minard left Aurora, driving Hugh Rush's automobile, which he had left at Aurora, and she met Hugh Rush at the railroad station in Burlington, Iowa on March 5, 1940; that they then went directly to the marriage license bureau in Burlington, Iowa and made application for a marriage license with the district court of Des Moines county, Iowa, in which application both Hugh Rush and Rose Minard gave their place of residence as 720 Oak Avenue, Aurora, Illinois; that a license to marry was issued upon this application and thereafter on the same day, March 5, 1940, they were duly married and immediately returned together to their home at 720 Oak Avenue, Aurora, Illinois and continued to reside there until May 31, 1951, the date of Hugh Rush's death; that no children were born to Hugh Rush and Rose Minard nor were any children ever adopted by them.

It further appears from the record that the complaint for divorce filed in the district court of Nevada by Hugh Rush alleged that for more than six weeks

next preceding the filing of the complaint he had been and was at the time the complaint was filed a bona fide resident of and domiciled in the county of Washoe, State of Nevada and during that time had been actually and physically present within said county and state; that he and the defendant were married on December 10, 1910 in Illinois and that on or about March 30, 1931 the defendant was committed to the State Hospital at Elgin, Illinois and had there been confined since that time and that she is an incurably insane person and that her insanity had existed more than two years prior to the commencement of this action. Upon the filing of the complaint a summons was issued which was served upon the defendant by delivering to her personally at Elgin, Illinois, a copy thereof on January 31, 1950. The record also shows that constructive service was had by publication. A guardian *ad litem* was appointed to appear for and represent the defendant and the guardian *ad litem* filed an answer in which he denied that the plaintiff was or had been a bona fide resident of the county of Washoe, Nevada, as alleged but admitted the other allegations of the complaint.

On March 2, 1940 the cause was heard resulting in a decree finding the requisite jurisdictional facts and that the plaintiff was entitled to a decree of divorce on the ground that the defendant is an insane person. The decree dissolved the marriage and restored each party to the status of a single person.

Counsel for appellant call our attention to the record wherein it appears that the complaint for divorce filed by Hugh Rush in Nevada prayed for the appointment of a guardian *ad litem* to protect the interests of and represent Mabel Rush, the insane defendant; that a guardian *ad litem* was appointed by the court who answered the complaint and put in issue the question of domicile or residence of the plaintiff; that a hearing was had, evidence heard and a specific finding made

by the court that Hugh Rush, at the time of the entry of the decree of divorce, was a bona fide resident of and domiciled in Washoe county, Nevada. From these facts counsel argue that appellee in this proceeding is attempting to relitigate the issue of domicile of Hugh Rush in the State of Nevada prior to the entry of the decree for divorce; that under the holding of *Williams v. North Carolina,* 325 U. S. 226, 89 L. Ed. 1577, this cannot be done and that the decree for divorce obtained by Hugh Rush from Mabel Rush in the State of Nevada, is entitled to and must be given full faith and credit by the courts in Illinois.

In the *Williams* case, *supra,* it appeared that the defendant had left his home in North Carolina and gone to the State of Nevada where he procured a divorce from his wife on service by publication and his wife did not appear to contest the divorce. After the divorce had been granted by the Nevada court, Williams returned to North Carolina and married and criminal proceedings for bigamy followed. The North Carolina court found that the defendant had not established a bona fide domicile in the State of Nevada and by reason thereof the State of North Carolina was not required to give full faith and credit to the Nevada divorce decree and the Supreme Court of the United States affirmed this holding. In *Atkins v. Atkins,* 393 Ill. 202, it was held that appellant did not establish a bona fide domicile in Nevada at the time the Nevada court granted a decree of divorce and therefore that decree was not entitled to full faith and credit in Illinois. In the course of its opinion the court referred to *Esenwein v. Pennsylvania,* 325 U. S. 279, 89 L. Ed. 1608, and to the *Williams* case, *supra,* and said: "As we analyze the opinion of the second *Williams* case and the *Esenwein* case, they hold (a) that the power of a court to grant a divorce is founded on domicile, and (b) that the full-faith-and-credit clause operates

only with respect to judgments rendered by a court whose jurisdiction either as to the subject matter or the person is not impeached. In the *Williams* case, it was said: 'No State need give full faith and credit to a "void" decree. A decree rendered by a court without "jurisdiction" is "void." No State court has jurisdiction to grant a divorce unless one of the parties is "domiciled" in the state.' "

 In the very late case of *Ludwig v. Ludwig*, 413 Ill. 44, 107 N. E. (2d) 848 the court had under consideration the determination whether the divorce proceeding brought by Robert R. Ludwig, against Bernice Ludwig in June 1950 in DuPage county, Illinois, was barred by a prior divorce decree obtained by Bernice Ludwig on February 16, 1940 in the State of Nevada. In the course of its opinion the court, speaking through MR. JUSTICE BRISTOW said: (omitting citations) "The principles indulging the validity of out-of-state divorce decrees have recently been reviewed and promulgated anew by both this court and the Supreme Court of the United States. According to our determinations, which are clearly consistent with those of the Supreme Court of the United States, the introduction of an out-of-state divorce decree constitutes prima facie evidence of validity. However, if the litigant who would escape the operation of the out-of-state decree sustains the burden of impeaching the jurisdictional prerequisite of bona fide domicile, then the decree will be deemed neither valid nor entitled to full faith and credit."

In the instant case Hugh Rush whose wife was then and had been incurably insane and confined in a state hospital, entered into an arrangement with appellant that he would go to Nevada for the purpose of obtaining a divorce from his legal wife; that he would then marry appellant and return to Illinois and live in the same home where they were then living and where they were engaged in business and would continue in the

125

same business. This arrangement was carried out. Prior to leaving Aurora for Nevada he did not dispose of any of his real or personal property. He continued in the ownership of his home, its furnishings and his automobile. His aged parents, who lived in this home continued to live there, as did appellant, while Hugh Rush was in Nevada and appellant continued to carry on his business during his absence. While in Nevada Mr. Rush wrote appellant to meet him with his car at the railroad station in Burlington, Iowa on March 5, 1940, upon his arrival from Nevada. She did this and they at once proceeded to secure a marriage license and were married that day and in their application for a license each gave their place of residence as 720 Oak Avenue, Aurora, Illinois and Mr. Rush gave his occupation as "Manager Physicians and Nurses Exchange, 720 Oak Park Avenue, Aurora, Illinois." From Burlington, Iowa, after their marriage and on the same day they proceeded together in his automobile to Aurora, arriving there the same day. From there they went to Chicago for a short honeymoon and then returned to Aurora where they continued to live at 720 Oak Avenue and they there continued their business until the death of Mr. Rush on May 31, 1951.

Appellant, upon the hearing, testified: "I knew when he (Hugh Rush) left home in December 1939 for Nevada that he was going there for the purpose of securing a divorce." Everything in this record, other than the recital in the decree rendered by the Nevada court, indicates clearly that Mr. Rush went to Nevada for only one purpose and that was to secure a divorce from his wife. He never intended to establish a domicile in that State. The only conclusion anyone can arrive at from this record is that when he left his home in Aurora in December 1939 he expected to return there, live there with appellant as his wife, care for his parents and operate the business just as he had been

doing before he left. That he never intended to remain in Nevada and establish a domicile there is evidenced by his lack of preparation for an extended stay as well as his announced plan, before he left Aurora, to return there as soon as he obtained his divorce.

■ Paraphrasing some of the language used by the court in *Ludwig v. Ludwig, supra,* we are firmly of the opinion that from the facts as disclosed by this record, the prima facie evidence of a valid divorce afforded appellant by the production of the Nevada decree, was successfully impeached by the evidence that decedent did not establish a bona fide domicile in Nevada and therefore that court was without jurisdiction to enter the decree and consequently the circuit court of Kane county was not bound to give it full faith and credit. The order appealed from must, therefore, be affirmed.

*Order affirmed.*