TARR v. TARR.

4-7415                                    182 S. W. 2d 348

Opinion delivered July 10, 1944.

*Eugene Coffelt,* for appellant.

*Russell Elrod,* for appellee.

SMITH, J. A. A. Tarr and Cassie M. Tarr were married March 23, 1913, and lived together as husband and wife until March, 1940. They have a son, now 22 years old, who is their only child.

Mr. Tarr became a resident of Siloam Springs in this state on August 16, 1943, and on October 18 thereafter filed this suit for a divorce, and as ground therefor alleged that he and his wife had lived separate and apart for more than three years, without cohabitation.

Act 20 of the Acts of 1939, p. 38, amending § 4381, Pope's Digest, makes this fact a ground for divorce, which, when established, entitles either spouse to sue for a divorce, and this without regard to the cause of separation. This Act provides that, ". . . The question of who is the injured party shall be considered only in the settlement of the property rights of the parties and the question of alimony." That this Act means what it plainly says, whatever we may think of its policy, has been held in the ten cases cited in the recent opinion in the case of *Young* v. *Young, ante,* p. 36, 178 S. W. 2d 994.

The still more recent case of *Larsen* v. *Larsen, ante,* p. 543, 181 S. W. 2d 683, is to the same effect.

The court found that the plaintiff had established this ground for divorce, and upon that finding a divorce decree was entered. The testimony sustains this finding, indeed, it is undisputed.

The wife filed an answer and cross-complaint, in which she denied that her husband was a resident of this state, and she prayed that alimony be allowed her. The wife is a non-resident of this state, and was made a party defendant by the publication of a warning order. It was held in the case of *McDougall* v. *McDougall,* 205 Ark. 945, 171 S. W. 2d 942, that although the statute requires that the plaintiff in an action for divorce be a resident of this state for a designated time before suit is filed, the court has jurisdiction to grant a divorce and allow alimony on the cross-complaint of a non-resident defendant. It was held also in the case of *Kennedy* v. *Kennedy,* 205 Ark. 650, 169 S. W. 2d 876, a suit under our 90-day divorce law, that while filing a motion for suit money and alimony, and an answer to the complaint of the plaintiff, had the effect of entering the defendant's appearance, it would not confer jurisdiction upon the court, if jurisdiction did not otherwise exist.

The jurisdictional question, therefore, presents itself whether the plaintiff had resided in this state for a sufficient length of time to maintain this suit. The court held that he had, but it is insisted that this finding is contrary to the preponderance of the evidence.

It is undisputed that Mr. Tarr became a resident of this state more than 60 days before filing suit, but the insistence is that he did not maintain that residence until the time of the trial. Tarr had been and is now engaged in the real estate business in Kansas City, Missouri, operating there under the name of Tarr Land Company, and it was shown that on more than one occasion, after becoming a resident of this state, he had made trips to Kansas City; but it was shown also that these trips were never of more than a day or two in

duration, and that after attending to the business which called him to Kansas City, he returned to this state, and it was not shown that during this time he maintained or had a residence in Missouri or elsewhere, except in this state.

We have consistently held that the residence required by our divorce law must be actual and not colorable, and in *Kennedy* v. *Kennedy, supra,* we said that the provisions of this law may be availed only by one who actually and in good faith became and was a resident of this state for the period of time prescribed by the statute; but we have also held that this actual residence once established is not lost or destroyed by temporary absence from the state. *Morgan* v. *Morgan,* 202 Ark. 76, 148 S. W. 2d 1078, citing *Wood* v. *Wood,* 140 Ark. 361, 215 S. W. 681.

In the case of *Murphy* v. *Murphy,* 200 Ark. 458, 140 S. W. 2d 416, we said, quoting from the prior case of *Carlson* v. *Carlson,* 198 Ark. 231, 128 S. W. 2d 242, that our divorce law did not mean that the plaintiff should not at any time during the 3 months residence leave the state for any purpose, and that he might reside here as did any other resident; but it did mean that during all of this 3 months period, he must be a resident of this state, and not of some other.

We think the testimony warranted the finding that plaintiff was a resident of the state for more than 60 days before filing his suit, and continued to be a resident until after the trial, which was more than three months after becoming a resident.

The court disallowed the claim of alimony, and did so upon the theory that at the time of the separation, the wife retained and converted to her own use property of the value which the law would otherwise have given her as alimony. It appears that just before the final separation Mrs. Tarr sold some cattle for about $400, as Mr. Tarr testified, but for $300, as Mrs. Tarr testified, and she converted the proceeds of the check given for

these cattle. Mrs. Tarr testified that her husband was in the business of buying and selling cattle, and owned 300 head at one time, but he had sold these cattle until he had only 22 head when he deserted her. She testified that she had milked a number of the cows, and sold about $5 worth of milk a day, from the proceeds of which sale she paid the operating expenses of the household, and she refused to surrender the $300 check until her husband had replaced the cows for the sale of which the check had been given. She told her husband, "No, you are not going to get this check until you put more cows in here. You are not going to set me out on foot. When you get more cows in here you can have the check."

Mrs. Tarr admitted that, when her husband deserted her, she retained possession of the household goods, but these she says were of small value, and that she has no income and is living with her father, a man of small means and 90 years of age. We can readily believe that the proceeds of this check have long since been expended, as Mrs. Tarr testified that she had a nervous breakdown.

In her original answer and cross-complaint, Mrs. Tarr asked an allowance of $40 per month as alimony, but in amended pleadings she increased this demand to $60 per month. Mr. Tarr testified that he employs four salesmen in his real estate business; that he pays the office rent, advertising charges and overhead expenses and gives them 50 per cent. of the commission on sales made by them, and in addition he himself makes sales without dividing his commissions. Mr. Tarr testified in effect that he is barely making both ends meet in the matter of his earnings and expenses, and that he is unable to pay any alimony; but we think his earnings in excess of his expenses are sufficient to pay his wife the sum of $40 per month, which she first demanded. We would allow a larger amount if his ability to pay justified, as we must take into account not only her necessity, but his ability to meet those necessities.

Act 20 of 1939, *supra,* denies us the right to inquire into the cause of the separation, but it does permit us to

consider "the question of who is the injured party . . . in the settlement of the property rights of the parties and the question of alimony." Mr. Tarr shows no ground for divorce except that by his voluntary act he has deserted the mother of his only son, and has lived apart from her without cohabitation for more than three years, and she is now dependent upon her aged father for support. Under the circumstances we think the original demand for alimony in the sum of $40 per month should be paid, and the cause will be remanded with directions to modify the decree in this respect.

KNOX, J., dissenting. Although the majority opinion states that "it is undisputed that Mr. Tarr became a resident of this state more than 60 days before filing suit," I am confident that it was not intended thereby to convey the impression that Tarr came to this state with the intention of residing here permanently, or for an indefinite length of time. An examination of the record discloses not only failure on his part to establish such facts, but reveals facts and circumstances leading to the contrary conclusion. At and for some time prior to coming to this state, Tarr was engaged in the real estate business in Kansas City, Missouri. He employed some five or six salesmen on a commission basis. Naturally this type of business required personal supervision. When he came to this state Mr. Tarr did not close his Kansas City business, nor take any steps towards effecting that end, nor make provision for another to take over the supervision thereof. It continued to operate and he made several trips to Kansas City to look after his affairs. He made no business connections in Arkansas. We have frequently declared that residence is a matter of intention, and that the intention to abandon one domicile and take up another must be ascertained from all of the facts and circumstances. *Mut. Ben. Health & Accident Assn.* v. *Kincannon,* 202 Ark. 1128, 155 S. W. 2d 687; *State* v. *Red Oak Trust & Savings Bank,* 167 Ark. 234, 267 S. W. 566, and, as has been said, we look behind mere physical action and appraise human behavior. *Hillman* v. *Hillman,* 200 Ark. 340, 138 S. W. 2d 1051. Looking behind physical action

and appraising human behavior here, we find appellee sojourning in Arkansas, trying to direct a business requiring his personal attention several hundred miles away, but making no effort to dispose of that business or acquire a supervisor at or near his alleged new domicile. Such conduct deceives no one. It is apparent that at the time he came to Arkansas, and at no time since then, appellee had no *bona fide* intention of remaining here. In fact, in reply to a question asked him on cross-examination relative to his intention to return to Kansas City, appellee answered "I might sometime."

As before stated, however, I do not understand that by the statement that appellee "became a resident of this state" the majority opinion intends to make a declaration of fact to the effect that appellee has at any time entertained an intention of remaining in this state permanently or for an indefinite period of time. Without citing or making direct reference thereto, the majority opinion has, and of necessity must have, applied the rule first announced by this court in the case of *Squire* v. *Squire,* 186 Ark. 511, 54 S. W. 2d 281, where it was declared that Arkansas courts have jurisdiction to grant a decree of divorce to a plaintiff against a nonresident defendant, even though such plaintiff has entered this state for the sole purpose of obtaining a divorce, and at all times intends to leave the state after the divorce is granted, provided such plaintiff has been actually and in good faith a resident for the prescribed period.

The rule of the Squire case has been reaffirmed and followed in a number of cases. *Carlson* v. *Carlson,* 198 Ark. 231, 128 S. W. 2d 242.

I am convinced that the rule of the Squire case is contrary to reason and authority, and should be overruled. It is, of course, conceded that the motive which prompts removal to this state is immaterial. The fact that a plaintiff in a divorce action may have come here for the purpose of availing himself of some provision of our law, which may appear advantageous to him, will not prevent him from acquiring a *bona fide* residence, pro-

vided the intention to remain here permanently or indefinitely really and in good faith existed in his mind. 17 Am. Jur. 286. But one cannot in good faith acquire a domicile in this state if the intention to remain here is lacking. Prior to the decision in the Squire case all courts were in agreement that the term "residence" as employed in divorce statutes meant a domiciliary residence. 27 C. J. S., § 71, p. 633.

"To confer jurisdiction . . . the parties, or one of them, must have a domicile or residence within the state . . ." 17 Am. Jur. 277. ". . . it is very generally held that the word 'reside' involves the idea of a domicile, importing an actual permanent dwelling or abode." 17 Am. Jur. 278.

Conflicts in jurisdiction respecting matters of divorce have contributed greatly to our jurisprudence in the field of Conflict of Laws. Marriage is a relation in which the public is deeply interested, and is subject to control or regulation by the sovereignty in which it exists. The state is a *quasi* party to all divorce actions. 17 Am. Jur. 154-155.

It is sometimes difficult to ascertain which state or sovereignty is, and of right ought to be, interested, and exercise rights as a *quasi* party to divorce action. There is much confusion and disagreement among the decisions upon the question. Strong arguments from time to time have been advanced that jurisdiction rightfully belonged to the state where (1) the marriage was celebrated, (2) where the parties jointly maintained their matrimonial domicile, (3) at the domicile of the husband, (4) the domicile of the innocent party, (5) the *bona fide* domicile of either party. Always, however, the search was for the jurisdiction which had the true interest in the controversy.

A careful analysis of the arguments advanced in favor of each type of jurisdiction would unduly prolong this opinion, and serve no useful purpose. It is sufficient to say that in later years the conflict of jurisdictions occurred largely between states of the matrimonial domi-

cile, and states in which one of the parties had taken up residence. Some states took the view that the matrimonial domicile could be established only by the parties voluntarily residing together as husband and wife therein, and only the last state in which such a residence occurred would have jurisdiction in divorce actions. Other states, on the other hand, took the view that where either party was in fact a *bona fide* resident of the state the courts of that state had jurisdiction on the petition of such party to hear and determine a suit for divorce. Arkansas early adopted the latter view. Until the Squire case, however, Arkansas, and all other states, held that one could not be a *bona fide* resident of the state while during the time of his residence he intended that when the divorce was granted, or some other contingency occurred, he would shake the dust of the state off his feet and find haven elsewhere.

That the residence necessary to confer jurisdiction in cases of divorce was one where the party intended that it should be permanent, or at least exist for an indefinite period, is clearly shown by the following quotation from 17 Am. Jur. (Divorce), § 250, p. 279, as follows: ". . . one of the essential elements which go to make up residence of a person as contemplated in the divorce laws is the intention on his part to live at the place of alleged residence permanently, or, as some of the cases put it, indefinitely. That a person has been bodily present in one place for the length of time required by the statutes is insufficient, if unaccompanied by the intention to live there permanently, to make that place his domicile. Abiding in one place for a definite time, until the accomplishment of a certain purpose, unaccompanied by any intention to remain permanently or indefinitely, is not sufficient to give a person a statutory residence."

Again, at 17 Am. Jur., Divorce, § 260, pp. 285, 286, it is said: "In determining whether the complainant has acquired a residence in the state, as required by the statute, as in other cases where residence or domicile is to be determined, there must have been an intention to remain in the state. Thus, it is generally held that merely

going to a state for the purpose of securing a divorce and residing there the required length of time, but without any intention of remaining there permanently or indefinitely, is not sufficient to give jurisdiction in divorce proceedings. The intention coupled with the acts of the party must both be considered. Intention has always been given large consideration, but claimed intention without acts to support it is not controlling." See, also, 27 C. J. S., Divorce, § 71.

Examination of the earlier volumes relating to divorce found in Ruling Case Law and Corpus Juris disclose that it was universally accepted that the nature of residence which gave courts jurisdiction of divorce actions, even in those states which did not adhere to the matrimonial domicile rule, was a residence of such character not only to constitute a domicile, but in addition one which was actual in its nature. Since in our early history our own courts were not attractive for those seeking quick and easy release from the ties of matrimony, our early cases are of little help, but in *Wood* v. *Wood,* 54 Ark. 172, 15 S. W. 459, it was disclosed that the residence required by the statute was even more than a mere domicile, for while one might maintain a constructive domicile, in order to invoke the jurisdiction of our courts to grant him a divorce he must maintain an actual residence.

The reason for the strictness in character of residence required becomes readily apparent when we consider the fact that a divorce action is a three party action, and that the sovereign has an interest and is constructively a party. There are early cases which adopt the view that only the sovereign to which the parties owed allegiance can grant a divorce; that they must be subjects before they invoke jurisdiction in a divorce action. It soon became apparent that this rule would not work, because the parties might owe allegiance to different sovereigns, and then subjects of one sovereign might spend their entire life within the jurisdictional boundaries of another sovereignty. The last sovereignty and its people naturally would have a vital interest in their mode of life.

Many sovereigns of necessity adopted the rule that jurisdiction to grant divorce could be exercised by any sovereignty to persons who in good faith had a *bona fide* domicile and actually resided and intended to continue to reside therein.

As before stated—the prior volumes of Ruling Case Law and Corpus Juris stated this as the test in all states which did not adhere to the doctrine of the matrimonial domicile. Arkansas in the Squire case, without giving any reason therefor, departed from the rule, and declared that one might be a *bona fide* resident for the purpose of invoking the jurisdiction of our courts in his action for divorce, when at all times he intended to leave our state the very day the decree was entered. By this declaration our court has declared: that our statute requires only actual physical presence; that one need to align himself with this state in no way except to spend three months within its border; and that it is not necessary that his residence be of such character as to give us jurisdiction of the *res* the "Marriage status" (17 Am. Jur., Divorce, § 241).

Our decisions on this question are out of harmony with the decisions of the courts of all other jurisdiction and should be overruled and the original rules reinstated.

For many years such conflict existed between the courts of the various jurisdictions as to where jurisdiction properly rested that determination of the question under the facts of each case became very difficult. For many years, in fact, the Supreme Court of the United States failed to apply the full faith and credit provision of the Constitution to questions relating to jurisdiction in divorce cases. In fact, such was the condition of the law at the time we decided the Squire case. *Haddock* v. *Haddock*, 201 U. S. 562, 50 L. Ed. 867, 26 S. Ct. 525, 5 Ann. Cas. 1. Since our decision in the Squire case, to-wit, on December 21, 1942, the Haddock case was overruled and the law declared thereby greatly modified, by the decision of the Supreme Court of the United States in the

case of *Williams* v. *North Carolina,* 317 U. S. 287, 63 S. Ct. 207, 87 L. Ed. 279, 143 A. L. R. 1273.

While that case appears to hold that the full faith and credit provisions of our Constitution apply to findings of fact in a divorce decree, it appears to the writer that it leaves open the question as to whether there was fraud in the evidence as to the existence of the residence upon which the finding of jurisdiction is based.

It would appear that the type of residence which makes a decree valid under the full faith and credit clause is a residence which partakes of the nature of a domicile, for as was said by Mr. Justice DOUGLAS in the Wood case, *supra,* ''The findings made in the divorce decrees in the instant case must be treated on the issue before us' as meeting those requirements. For it seems clear that the provisions of the Nevada statute that a plaintiff in this type of case must 'reside' in the state for the required period requires him to have a domicile as distinguished from a mere residence in the state.''

It is clear, therefore, that before the courts of other states will be required, under the provisions of the full faith and credit clause of the Constitution of the United States, to recognize decrees of divorce issued by courts of this state there shall be findings that (1) such fact is essential to jurisdiction of our courts, and (2) that such facts actually existed in the decided case. In my opinion, a lesser declaration makes the decree of no force and virtue outside the borders of this state. Not only is that particular decree affected, but all are of no effect so long as we maintain the rule that one may maintain the fixed intention to leave upon the granting of the divorce. One with such a state of mind cannot acquire a domicile and become a subject to the jurisdiction of our courts.

Not only is the decision of our court with respect to the character of residence necessary to give jurisdiction out of harmony with the decisions of other courts, but there exists a conflict in the interpretation which we have given to the word ''resides,'' where it appears at two different places in the chapter of our statute relating

to divorce. Under § 4386 of Pope's Digest, it is provided that "the plaintiff to obtain a divorce must prove . . . a residence in the state for three months next before the final judgment . . ." The residence there contemplated, according to the Squire and subsequent cases, need not have the character of permanency or be accompanied with intention to exist for an indefinite time. One may comply with this part of the statute even though he has the fixed intention of leaving the state immediately upon the rendition of the decree.

Now, § 4383 of Pope's Digest provides that the venue for a divorce proceeding shall be "in the county where the complainant resides," and in at least two cases rendered by this court since the decision in the Squire case, it has been held that such section of the statute contemplates that the complainant's residence in such county shall not be colorable, and his conduct shall have been such as to manifest a *bona fide* intention on his part of making it a fixed and permanent place of abode. *McLaughlin* v. *McLaughlin,* 193 Ark. 207, 99 S. W. 2d 571; *Hillman* v. *Hillman,* 200 Ark. 340, 138 S. W. 2d 1051. How could one have the intention of making a certain place in a certain locality in a county in Arkansas a fixed and permanent place of abode, so as to fix venue for his divorce proceedings in that county while at the same time taking advantage of the wide latitude of mental range allowed by the Squire case, and at all times maintaining fixed intention of leaving the state (which would, of course, include the county) immediately upon the rendition of the decree? With all due respect to my brethren on the court, I submit that there is an inconsistency here which should be corrected by overruling the Squire case, and those subsequent cases which have followed it. Such action can and should be taken in this case, and decree of the lower court affirmed, because of lack of jurisdiction for want of a *bona fide* residence.