**LOCOMOTIVE ENGINEERS MUT. LIFE & ACCIDENT INS. ASS'N v. LAURENT et al.**

**LAURENT et al. v. LAURENT.**

No. 9672.

United States Court of Appeals Seventh Circuit.

Feb. 21, 1949.

Louis Beasley, of East St. Louis, Ill., for appellants.

Ralph Lesemann, of East St. Louis, Ill., and Arnim C. Beste, of St. Louis, Mo., (Norman R. Walker and Baker, Lesemann, Kagy & Wagner, all of East St. Louis, Ill., of counsel), for appellee.

Before MAJOR, Chief Judge, KERNER, Circuit Judge, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff, a non-profit insurance association, filed an interpleader suit, asking the District Court to determine the proper claimant to the proceeds of an insurance policy it had issued upon the life of one John Laurent. It made defendants, the appellants, Anna Laurent and the children of the insured, and the appellee, Irma Laurent. Anna was the wife of the insured and beneficiary in the policy at the time it issued. Irma was beneficiary in the policy at the time of the insured's death, claiming to be his wife by virtue of a marriage entered into, subsequent to a divorce granted John from Anna in Arkansas. The children of the insured were made parties in order that, if the court should find the claims of both Anna and Irma invalid, the heirs and next of kin of the insured, would be before the court, for such disposition of the proceeds of insurance as the court should deem proper.

Anna and the children answered that Anna was entitled to the insurance proceeds and that Irma had no interest therein, and filed a counterclaim asking that the court award the proceeds to Anna. They contended in their claim and at the trial that the Arkansas divorce was void for want of jurisdiction. Irma answered that the insured had been divorced from Anna by valid decree and legally married to her, Irma, and that the insured had properly made her beneficiary after their marriage, shortly after the divorce was granted. She contended in her counterclaim and at the trial that she was entitled to the insurance proceeds, not only because she was the wife of the insured at the time of his death, but also because she was a qualified beneficiary by virtue of plaintiff's constitution and by-laws, which provide that benefits may be paid to persons standing in certain relationship to the policy-holder, including his wife, certain other relatives and a "person or persons dependent upon" him. At the conclusion of the trial the court entered judgment in favor of appellee Irma Laurent.

An important issue at the trial and presented on this appeal is whether, as the Dis-

trict Court found, the Arkansas court's decree of divorce to John from Anna and John's subsequent marriage to Irma, were valid. Collateral to this issue is a question of the propriety of the trial court's findings that no fraud was practiced upon the Arkansas court by John in obtaining the decree and that John had established a bonafide domicile in Arkansas sufficient to confer jurisdiction upon the Arkansas court to grant the decree of divorce. A second issue is whether Irma is, irrespective of any question of validity of the divorce decree and Irma's subsequent marriage to John, entitled to the proceeds of the policy as "a person dependent upon John at the time of his death." The appellee presents a further contention that Anna, having accepted the benefits awarded her under a separate maintenance decree and under the contract of her husband recognized therein, is estopped from claiming the proceeds. Certain questions are presented also as to the propriety of the action of the trial court in admitting certain testimony.

Much of the evidence is undisputed. John and Anna were lawfully married in 1910 and lived together thereafter as husband and wife in the village of Dupo in St. Clair County, Illinois, until they separated in October, 1937. He was a locomotive engineer on the Missouri Pacific Railroad, running between Dupo and various points south and west. The insurance policy was issued in October 1933 and in it, Anna was designated beneficiary. The two did not live together after separation in 1937.

In 1938 Anna instituted suit for separate maintenance against John in the City Court of East St. Louis. The court, in its decree, awarded the relief prayed, finding that the parties had agreed, in a property settlement, that their home be conveyed to Anna, that John pay all taxes and special assessments upon it and the personal property, turn to Anna all household and personal property situated in the home, and pay the fees of her solicitor and $100 a month for her separate maintenance and support, and that she, in return for these benefits, turn over to John, the insurance policy and five shares of bank stock. The court found the agreement valid, approved it and directed that it be carried out, as it was, in fact,

thereafter. As to the foregoing facts, there is no dispute.

In support of Anna's contention that John had fraudulently obtained a divorce, in that his domicile in Arkansas had not been established prior to obtaining the divorce decree, and, that as a result, the Arkansas court had no jurisdiction to alter his marital status, and in that he had failed to acquaint that court with the existence of the Illinois separate maintenance decree, she introduced in evidence the complaint filed in the Arkansas court and the decree of divorce entered by that court. In an attempt to prove that John was not domiciled in Arkansas at the time of the divorce, she relied upon various circumstances and the inferences which she contended should be drawn therefrom. Thus she showed that envelopes in which John mailed to her three certain payments gave Dupo, Illinois, as his return address; that his pay checks were endorsed and cashed at the Plaza Bank at St. Louis; that a safety deposit box rented by him in Dupo in September, 1931, continued to stand in his name until December 5, 1941, when he cancelled the rental contract therefor and withdrew the contents of the box; that, through November, 1941, he paid the dues and premiums on the policy to plaintiff by leaving the same at a Dupo bank; that the application for change of beneficiary gave his address as Dupo; that his run was between Dupo and Paragould from 1938 to 1942; that he was seen in Dupo about every third day; that the children, working in Granite City, frequently met him driving his automobile between Dupo and East St. Louis and that his automobile was seen from time to time at the railroad roundhouse in Dupo.

However, it appears that the three envelopes bearing the return address of Dupo were mailed at Paragould, Arkansas; that Anna had received other similar monthly payments but did not produce the envelopes in which they were enclosed; that John had a lay-over in Dupo after each trip before making the return trip to Paragould; that the Plaza bank, where he cashed his checks, was in the same building in which the checks were made and delivered to him; that other employees not living in Dupo also received and cashed

their checks there; that the last rent on his safety deposit box was paid in July, 1940, for the year ending July 16, 1941; that many of the employees of the Missouri Pacific who lived elsewhere paid dues to plaintiff at Dupo; that when John applied for change of beneficiary, the address of Dupo was inserted by the insurance company's authorities; that names of all engineers appeared on the call board, both at Paragould and Dupo; that those living in Paragould spent necessarily some time in Dupo or St. Louis before returning to Paragould; that John usually stayed in East St. Louis or St. Louis during periods of lay-over at Dupo and that he necessarily used his car at the Dupo end, in order to travel there from East St. Louis and St. Louis.

Irma introduced evidence that in March, 1941, John informed one Smallenberger, a fellow engineer, that he intended to make Paragould his home; that thereafter he rented a room regularly at Paragould in a private home; that he moved to this room all his personal belongings including clothing, books, electric fan, radio and trunk; that, after he and Irma were married, they lived in the room which he had previously rented, until he was able to locate an apartment; that he then rented an apartment in Paragould in which they lived until they removed to St. Louis; that in this apartment were their personal belongings and their own telephone; that in the spring of 1942, Irma became ill and they moved to St. Louis so that she could be treated by a physician there and that, from that time on, they lived in St. Louis until his death.

The District Court heard this and other evidence upon the question of whether John was domiciled in Paragould at the time he obtained his divorce there, and, at the conclusion of the trial, found that the evidence failed to prove that John had not been a bonafide resident of the state of Arkansas prior to and at the time of the decree of divorce for at least 60 days prior to the institution of the proceeding and that the evidence was consistent with his having been a bonafide resident of the state throughout the necessary statutory period.

As to the trial in the divorce court, Irma introduced the testimony of a witness who attended that trial to the effect that in his testimony there, John told the court about the separate maintenance decree that had been entered in Illinois and stated that he intended to continue to make his payments as ordered therein. This evidence was undisputed, but was objected to. The divorce decree found that John was and had been for more than 60 days preceding the filing of the suit, a bonafide resident of Arkansas.

When the divorce suit was instituted, notice was given in compliance with the Arkansas statute and an attorney was appointed by the court to represent Anna. He wrote her informing her of the suit and advising her of her rights to contest John's claim. Upon receipt of the letter, she talked with her children and consulted with her counsel and concluded that she would not make any defense.

The District Court found that John had advised the trial court in Arkansas, at the divorce hearing, of the existence and provisions of the separate maintenance decree then in existence; that, on November 3, 1941, subsequent to the entry of the decree, John was legally married to Irma and that they lived and cohabitated together as husband and wife at all times prior to the death of John; that he died while he and Irma were living together as husband and wife, on November 17, 1946; that at all times subsequent to their marriage, John supported Irma; that she received her sole support from him, except that at one time she earned a small amount to supplement their income to help pay her medical expenses; that, subsequent to the death of John, Irma paid a premium on the policy, due before his death; that the decree of divorce granted John was valid and entitled to full faith and credit; that the change of beneficiary from Anna to Irma in December, 1941, was valid and effective and that Irma is now the beneficiary under the policy and entitled to the proceeds of insurance.

■ Whether the conclusion of the court that the divorce was valid is of course a question dependent upon the law of Arkansas as applied to the facts of the case. Section 4386, Pope's Digest of Arkansas Statutes, provides that a plaintiff must show residence in the state three months before final judgment granting divorce and residence of two months before commencement

of the action. John's complaint averred that he had been a resident of Arkansas for more than 60 days prior to the commencement of the suit and in the decree the court found that he had been a resident for more than 90 days prior to the date of the decree. This, under Tarr v. Tarr, 207 Ark. 622, 182 S.W.2d 348, and Brickey v. Brickey, 205 Ark. 373, 168 S.W.2d 845, was sufficient to confer jurisdiction upon the Arkansas court to grant the decree of divorce.

█ With regard to the effect of the separate maintenance decree entered in Illinois upon the jurisdiction of the divorce court, we should observe that the Arkansas statute, Section 4381, Pope's Digest of Arkansas Statutes, provides that, where a husband and wife have lived separate and apart for three years without cohabitation, the court shall grant an absolute decree of divorce at the suit of either party, whether such separation was a voluntary act or by the mutual consent of the parties and that the question of who is the injured person, shall be considered only in settlement of the property rights of the parties and the question of alimony. Thus, the fact that the parties had lived separate and apart for three years was, under the Arkansas statute, ground for divorce. The validity of this section and of divorces granted thereunder appears from Jones v. Jones, 199 Ark. 1000, 137 S.W.2d 238; Brooks v. Brooks, 201 Ark. 14, 143 S.W.2d 1098; Tarr v. Tarr, 207 Ark. 622, 182 S.W. 2d 348.

It seems quite clear, therefore, that the fact that a separate maintenance decree was in existence, so far as affecting the validity of divorce in Arkansas was concerned, was immaterial; it constituted no bar to the divorce, but, in fact, was ground therefor. In Brickey v. Brickey, 205 Ark. 373, 168 S.W.2d 845, 846, in a similar situation, the court said: "In the decree, * * * it is recited that: 'It is not intended by this decree to in any way disturb, modify or adopt the decree rendered in Illinois between the same parties.' But this decree, which appellant made an exhibit to her answer, rendered in 1939, is not conclusive of the fact that appellee was not entitled to a divorce, when the decree here appealed from was rendered. * * *

It was admitted at the trial * * * that appellant and appellee had lived separate and apart without cohabitation for more than three years. He, therefore, then had this statutory ground for a divorce. A headnote to the case of Goud v. Goud, 203 Ark. 244, 156 S.W.2d 225, is as follows: 'Divorce—Res Judicata.—Judgment denying a divorce in another jurisdiction is not res judicata of an action under act No. 20 of 1939 on the ground that the parties have not lived together for three years where the state where the former application was made had no such statute.' "

█ Inasmuch, then, as under the Arkansas statute and the decisions of the Supreme Court of that state, the existence of the Illinois separate maintenance decree, as to which the Arkansas court was advised during the divorce hearing, was no bar to divorce but was, indeed, a recognized statutory ground therefor, if the fact of domicile was established, under Williams v. State of North Carolina, 317 U.S. 287, 63 S.Ct. 207, 215, 87 L.Ed. 279, 143 A.L.R. 1273; full faith and credit must be given to the decree. As the Supreme Court said: "When a court of one state acting in accord with the requirements of procedural due process alters the marital status of one domiciled in that state by granting him a divorce from his absent spouse, we cannot say its decree should be excepted from the full faith and credit clause merely because its enforcement or recognition in another state would conflict with the policy of the latter." See also Estin v. Estin, 334 U.S. 541, 68 S.Ct. 1213, 1216, where the court said: "The requirements of procedural due process were satisfied and the domicile of the husband in Nevada was foundation for a decree effecting a change in the marital capacity of both parties in all the other States of the Union, as well as in Nevada." That this is the law in Illinois is shown by Atkins v. Atkins, 386 Ill. 345, 54 N.E.2d 488.

█ Obviously, this situation did not foreclose the District Court from inquiring into the validity of the Arkansas divorce. There is no question but that Anna had the right to contest validity of the claim of residence or domicile of John at the time of the divorce, inasmuch as the jurisdiction of the divorce court was questioned. How-

894

ever, the decree is presumed to be valid and the burden of establishing its invalidity, upon any ground available for an attack upon it, rests heavily upon the party challenging it. Thus in the second Williams case, 325 U.S. 226, 65 S.Ct. 1092, 1097, 89 L.Ed. 1577, 157 A.L.R. 1366, the court said: "The fact that the Nevada court found that they were domiciled there is entitled to respect, and more. The burden of undermining the verity which the Nevada decrees import rests heavily upon the assailant." And the Illinois court in Atkins v. Atkins, 393 Ill. 202, 65 N.E.2d 801, 804, said: "The burden of impeaching the decree for want of jurisdiction rested on appellee."

 We have referred to some of the controverted evidence submitted to the trial court bearing upon the question of domicile and the resulting jurisdiction of the Arkansas court. The District Court recognized the rule that the burden lay upon Anna to prove that the divorce had been fraudulently obtained and, after hearing and considering the evidence, found that Anna had failed to prove that John was not a bonafide resident of the state of Arkansas prior to and at the time of the entry of the decree, but that all of the evidence which she had submitted in that respect was consistent with John having been a bonafide resident of the state, residing in the city of Paragould throughout the necessary statutory period of time. Needless to say, the finding of fact upon controverted evidence may not be reversed upon appeal unless, as the rules provide, it is clearly erroneous. Rule 52 of Federal Rules of Civil Procedure, 28 U.S.C.A. We may not substitute our judgment for that of the trier of the facts, in the absence of such clear error. We find no such error in this record.

 In this connection, Anna makes the claim that the denial of John's later petition for modification of the separate maintenance decree in Illinois, estops Irma from asserting validity of the Arkansas decree. The record discloses that the only parties to the supplemental separate maintenance proceeding were John and Anna and that that proceeding raised the question of what he ought to continue to pay for her maintenance and support. He asked for reduction in amounts; her counter-petition requested that the payments be increased. The court merely denied the claim of each. It made no adjudication of any character other than that John was not entitled to have the payments decreased and that she, Anna, was not entitled to have them increased. The only possible inference is that the court found that the property settlement previously made should be carried out,—a property settlement of which the divorce court had been advised.

We see no basis for estoppel or res judicata in these facts. Thus, in June v. George C. Peterson Co., 7 Cir., 155 F.2d 963, 965, the court said: "In order to interpose the defense of res judicata successfully, there must be an identity of parties, subject matter and cause of action. De Met's, Inc., v. Insull, 7 Cir., 122 F.2d 755, 757; People ex rel. Gustus v. Swan, 382 Ill. 184, 46 N.E.2d 1003. The 'essence of estoppel by judgment is that some like question of fact in dispute has been judicially determined by a court of competent jurisdiction between the same parties or their privies.' McVeigh v. McGurren, 7 Cir., 117 F.2d 672, 678." And the Supreme Court of Illinois in Hoffman v. Hoffman, 330 Ill. 413, 161 N.E. 723, 726, announced that "To operate as an estoppel by verdict, it is absolutely necessary that there shall have been a finding of a specific fact in the former judgment or record that is material and controlling in that case and also material and controlling in the pending case. It must also conclusively appear that the matter of fact was so in issue that it was necessarily determined by the court rendering the judgment interposed as a bar by reason of such estoppel." See also Skolnik v. Petella, 376 Ill. 500, 34 N.E.2d 825; Ohio National Life Insurance Company v. Board of Education, 387 Ill. 159, 55 N.E.2d 163 and the decision of this court in June v. George C. Peterson Co., 7 Cir., 155 F. 2d 963, 965. We think the decree constituted no adjudication or estoppel against Irma from claiming that the divorce and her subsequent marriage to John were valid. First of all there was no adjudication, even as against John, except that he should continue to make the payments he had agreed to make, as ordered by the court. Then, Irma was not a party to the proceeding

and, though estoppel by verdict may sometimes be asserted against one who is in privity with the party, such situation does not exist in the present case. Irma does not stand in such privity with John in connection with the subject matter of this suit as to render any estoppel which might ensue from the Illinois court's order applicable to her. In 50 C.J.S., Judgments, § 798, page 344 it is said: "The judgment or decree rendered in an action by the wife against the husband is binding on both the wife and the husband; but, in the case of successive marriages, a decree, decision, or determination in an action between the husband and one wife is not binding or conclusive on another wife who was not a party to the action." See also American Woolen Company v. Lesher, 267 Ill. 11, 107 N.E. 882. As a result, we find no evidence to justify us in concluding that the District Court's findings and conclusions were clearly erroneous in this respect.

In this connection, on the face of the record, a serious question arises as to the jurisdiction of the City Court of East St. Louis which rendered the separate maintenance decree, inasmuch as the parties to that suit did not reside within the city but, in view of our conclusions we pass that question.

The court found also that, at all times subsequent to the marriage of Irma and John, up until the time of John's death, Irma was supported by and received her sole support from him. Thus, Irma was a qualified beneficiary, even were there lack of jurisdiction in the Arkansas court, for, under this finding, she was a qualified beneficiary under the by-laws of plaintiff as one dependent upon the insured. Obviously she and John believed they were properly married and, in good faith, lived together as husband and wife at all times after their marriage. In such a situation, according to the decisions of the Ohio courts, the woman is entitled to support and maintenance; she is dependent upon the man and may be properly named as beneficiary. Slovenian Mutual Benefit Association v. Knafelj, 36 Ohio App. 562, 173 N.E. 630. Similar is Starr v. Knights of Maccabees, 27 Ohio Cir.Ct.R. 475, affirmed, without opinion, by the Supreme Court of Ohio

in Styre v. Starr, 74 Ohio St. 501, 78 N.E. 1139. In James v. Supreme Council of the Royal Arcanum, C.C., 130 F. 1014, 1016, the court remarked: "Being in fact a dependent upon the member, she falls within the category of insurable persons, within the true meaning of the laws governing the defendant corporation, and within the true intent and meaning of the contract as made between the parties." See also Senge v. Senge, 106 Ill.App. 140; Wojanski v. Wojanski, 136 Ill.App. 614.

Anna insists that the District Court erred in admitting evidence over her objection to the effect that John told the witness Smallenberger that he was going to make Paragould his home. The ground for objection urged is that the declaration was not made in Anna's presence. Declarations of intention to establish and maintain residence in a particular locality are entitled to consideration in the determination of the fact. Townsend v. Bucyrus-Erie Co., 10 Cir., 144 F.2d 106. In Matzenbaugh v. People, 194 Ill. 108, 62 N.E. 546, 548, 88 Am.St.Rep. 134, the court said: "The declarations of the party are at times admissible to show the intent in making the journey. * * * Any declarations of appellant which were so connected with the act of going from Illinois to Texas that they should have been regarded as qualifying or characterizing the act were admissible in evidence as tending to establish the intent which actuated the appellant at the time." See also 6 Wigmore on Evidence, 3rd Ed., 1940, Secs. 1727-1784. We know of no requirement that such a declaration be made in the presence of any particular person. It is the declaration of the party, in his regular course of living, made to any one, which is admissible to aid in determining his intention. The testimony was properly admitted.

Objection was also made to the proof of what John testified to in the divorce court in Arkansas. Apparently no permanent record of the testimony was preserved; hence, other evidence was admissible to prove what testimony was received. Inasmuch as the proof came from a witness who was personally present at the time of the hearing in the divorce proceeding, it is

obvious that the court did not err in receiving it.

Various other suggestions have been presented which, in view of our conclusions, it is unnecessary to consider.

The judgment is affirmed.