BERGER *v.* BERGER.

5-88, 5-131                    261 S. W. 2d 259

Opinion delivered October 12, 1953.

*Shackleford & Shackleford,* for appellant in No. 88.

*Harry C. Steinberg* and *Claude E. Love,* for appellee in No. 88.

*Harry C. Steinberg* and *Claude E. Love,* for appellant in No. 131.

*Shackleford & Shackleford,* for appellee in No. 131.

ED. F. McFADDIN, Justice. These two cases (Nos. 88 and 131) involve Mr. and Mrs. Berger, who were married in 1910, reared a family, and then separated in 1942, due to the fault of Mr. Berger. That the parties have lived separate and apart for three years without cohabitation was clearly established. Likewise, the *bona fide* residence of Mr. Berger in Arkansas was established. So the Trial Court was correct in granting the divorce to Mr. Berger under the seventh ground stated in § 34-1202, Ark. Stats. These cases relate to other questions.

## Case No. 88

In this case, Mrs. Berger claims that she is entitled to judgment against Mr. Berger for an amount in excess of $6,600 because of a judgment rendered in the State of Connecticut. In 1943 the Town Court of West Hartford, Connecticut—on information filed by the Prosecuting Attorney—arrested and convicted Mr. Berger of the crime of non-support. The judgment in that case concludes:

"And it is thereupon considered and ordered by said Court that the said Berger pay costs of prosecution taxed at 6 dollars and 85 cents, and stand committed to the common Jail in Hartford, in said County, until this sentence be performed. And also that he, the said Berger, shall pay $15.00 per week towards the support of his wife and be bonded in the sum of $750.00."

Mr. Berger made four weekly payments on the aforesaid judgment and then left the State of Connecticut. There is nothing in the evidence in the present case to show that any action was ever taken to collect on the bond.

In this Case No. 88 Mrs. Berger claims that the unpaid weekly payments of $15 from 1943 to 1952 exceed $6,600, for which she seeks judgment. The Union Chancery Court denied her claim, and that is the issue on this appeal. We reach the conclusion that the Union Chancery Court was correct. In *Tolley* v. *Tolley*, 210 Ark. 144, 194 S. W. 2d 687, we held that the enforcibility in this State of a foreign judgment for support money depends on the effect the rendering State—in this instance, Connecticut—gives to such a judgment. An examination of the Connecticut Statutes and cases convinces us that the judgment of the Town Court of West Hartford, Connecticut, in the said criminal case against Mr. Berger, is not a judgment that Mrs. Berger could have enforced in Connecticut.

The non-support judgment in Connecticut was in a criminal action under § 6265 of the Connecticut Statutes of 1930[1]; and was not an alimony judgment under § 5182 of the Connecticut Statutes of 1930.[2] The Connecticut law provides that if the weekly payments should be defaulted in the criminal action, then the Town could take a forfeiture on the bond and the Court declaring the forfeiture could order the money paid either to the wife or to the Selectmen of the Town.[3] A Connecticut case bearing on this point is *State* v. *Newman*, 91 Conn. 60, 98 Atl. 346, 3 A. L. R. 103, in which the Supreme Court of Errors of Connecticut, in speaking of a proceeding under the Statute which, with amendments, is now § 8586 of the Connecticut Statutes of 1949, said:

"It is to be observed that this proceeding is not instituted in the name of the wife, but that it is a criminal prosecution in the name of the State."

See also *State* v. *Allderige*, 124 Conn. 377, 200 Atl. 341, and *State* v. *Pace*, 129 Conn. 570, 29 Atl. 2d 755.

Since the judgment in the non-support proceedings in Connecticut was not rendered in an *alimony action,*

---

[1] This is now § 8586 of the Conn. Statutes of 1949.

[2] This is now § 7335 of the Conn. Statutes of 1949.

[3] See § 6269 of the Conn. Statutes of 1930, which is now § 8590 of the Conn. Statutes of 1949.

but in a *criminal action,* and since the bond of $750 is for the benefit of the Town of West Hartford,[4] it necessarily follows that Mrs. Berger is not entitled to judgment here in her favor for any amount under the Connecticut non-support criminal proceeding. Therefore the decree in Case No. 88 is affirmed.

### Case No. 131

After the Union Chancery Court refused Mrs. Berger a judgment for $6,600, as heretofore discussed, the hearing on her claim for alimony was continued; and at a subsequent date the Union Chancery Court awarded Mrs. Berger alimony of $150 per month. From that award Mr. Berger prosecutes the present appeal, claiming that he has no finances with which to pay such amount of alimony. It was shown that, due to her ill health, etc., Mrs. Berger's living expenses were $312 per month.

Our cases all recognize that in fixing the amount of alimony, the Court must take into account not only the wife's necesssity, but also the husband's ability to pay. *McCourtney* v. *McCourtney,* 205 Ark. 111, 168 S. W. 2d 200; *Tarr* v. *Tarr,* 207 Ark. 622, 182 S. W. 2d 348; *Coltharp* v. *Coltharp,* 218 Ark. 215, 235 S. W. 2d 884. The question here is Mr. Berger's ability to pay the alimony. He testified that he had only $2,500 when he moved to Arkansas from Florida in 1952; that it cost him $250 per month to live; that he was working on a plan to construct pre-fabricated houses and had not yet formed a company or gone into production. Thus he claimed a complete inability to pay any alimony.

But the Trial Court gave much weight to the testimony of Peter J. Berger, a mature businessman, living

---

[4] The Conn. statute provides a maximum penalty of one year, but § 8589 which controls in the present instance, since the judgment was by the *Town* Court of West Hartford, limits the possible maximum to six months. Since § 8586 provides for the suspension of sentence upon the accused's providing a bond to insure the payments ordered, it is evident that the bond in the instant case was to insure payment for six months only. To reduce it to actual dollars potentially due under the bond as ordered, therefore, the amount would be $390.00 for twenty-six weeks at $15 per week, plus $6.85 for costs; a total of $396.85. This would appear to be, with possible allowance for interest to be added, the total collectible by the obligee on the bond against the obligor.

in Michigan, and being the son of Mr. and Mrs. Berger. Mr. Peter J. Berger testified that in 1951, his father, Mr. Berger, had extensive real estate holdings in Florida. Here is a portion of his testimony:

"A.   He owned a part of a building in North Miami. It was sold, the deed was conveyed as of January of this year.   It was sold for $107,000, subject to a mortgage of slightly less than $70,000.   Call it $70,000, for a round figure.   It left him a net cash equity of approximately $37,000.

"Q.   In January of this year?

"A.   Yes, sir.

"Q.   Do you know of any other transactions he made in Florida this year or prior to that?

"A.   I certainly do.   I have photostatic copies of deeds here which, by figuring everything up, amount to several thousand dollars.

.   .   .   .   .

"Q.   Now, in addition to those you have just recited, there was a net gain of around $37,000 in January of this year from real estate transactions in Florida?

"A.   That is right, in addition to other houses under construction.   I am not exactly sure of the years but I think it was 1950 that he had built and subsequently sold, and I am a builder myself and I know that the profit on it must have been at least $3,000 per unit, a minimum profit of that."

From the foregoing testimony, which Mr. Berger did not subsequently take the stand to refute, the Trial Court concluded that Mr. Berger was concealing his assets, and therefore rendered the decree for alimony here attacked.   We cannot say that the Trial Court was in error, so the decree for alimony is affirmed.   All costs are taxed against Mr. Berger.